BETTY J. OLSEN, APPELLANT, V. FRANCIS L. RICHARDS, M.D., APPELLEE.

440 N.W.2d 463

Filed May 26, 1989. No. 87-1112.

H. Titus Swan, of Anderson, Klein, Peterson and Swan, for appellant.

Daniel L. Lindstrom and Jeffrey H. Jacobsen, of Jacobsen, Orr, Nelson & Wright, P.C., for appellee.

BOSLAUGH, CAPORALE, and GRANT, JJ., and SPRAGUE and MULLEN, D. JJ.

CAPORALE, J.

Plaintiff-appellant, Betty J. Olsen, seeks to recover for injuries sustained while visiting her physician, defendant-appellee, Francis L. Richards. The district court sustained Richards' demurrer on the ground Olsen's cause is time barred and, after Olsen refused to plead further, dismissed the action. Olsen assigns the dismissal of her action as error. We affirm.

Olsen's petition was filed on May 22, 1987, and avers that on May 26, 1983, she went to Richards' office "for a scheduled examination and sinus treatment"; that Richards seated her "in a large antique chair consisting of a double-wide steel headrest on top"; and that "[p]rior to the examination and treatment . . . Richards situated his hands on the headrest and suddenly and forcefully slammed the headrest down" on Olsen's neck, thereby "causing severe pain and damage to the back of [Olsen's] neck."

The sole issue is whether, as Olsen contends, the 4-year statute of limitations relating to ordinary negligence, Neb. Rev. Stat. § 25-207 (Reissue 1985), applies or whether, as Richards urges, either the 2-year malpractice statute of limitations, Neb. Rev. Stat. § 25-208 (Reissue 1985), or the 2-year professional negligence statute of limitations, Neb. Rev. Stat. § 25-222 (Reissue 1985), controls. Obviously, if the ordinary negligence statute of limitations governs, Olsen's action is not time barred; however, if either the malpractice or professional negligence statute of limitations covers the situation, Olsen's action is so barred.

Olsen's thesis is that her action is regulated by § 25-207

because she has alleged an act of "ordinary negligence." Richards' theory is that as the act of adjusting the examination chair was an integral part of his examination of Olsen as his patient and arose out of the same circumstances as any other act performed by a physician in the course of such an examination and treatment, one or the other of the shorter statutes of limitations rules the outcome.

In *Swassing v. Baum*, 195 Neb. 651, 240 N.W.2d 24 (1976), this court determined that an action, brought against a physician on a respondeat superior theory for the alleged negligent acts of his employee in performing a blood-typing test on the plaintiff, was governed by the statute of limitations relating to professional negligence rather than that relating to ordinary negligence. The determinative inquiry for the court was whether the employee was engaged in professional services. Quoting *Marx v. Hartford Acc. & Ind. Co.*, 183 Neb. 12, 157 N.W.2d 870 (1968), we said:

> "A 'professional' act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual. * * * In determining whether a particular act is of a professional nature or a 'professional service' *we must look not to the title or character of the party performing the act, but to the act itself.*" . . . It is thus irrelevant, in determining whether [the employee] was performing a professional service at the time of the alleged negligence, to show what the title of her position with [the physician] was, or what her status was denominated. The court must look to the nature of the act itself and the circumstances under which it was performed.

(Emphasis in original.) *Swassing v. Baum* at 656, 240 N.W.2d at 27.

The *Swassing* court concluded:

> The performance of the blood test was an essential and integral part of the rendition of professional services by [the physician] to [the plaintiff]. When [the plaintiff] presented herself to [the physician] . . . for examination

and diagnosis, a professional relationship, in this case, doctor-patient, was created. This professional relationship was the stimulus for the performance of the blood typing test on [the plaintiff], and the test and the interpretation of its results all occurred during the course of the professional relationship.

*Id.*

In *Stacey v. Pantano*, 177 Neb. 694, 131 N.W.2d 163 (1964), this court determined that the 2-year malpractice statute of limitations, rather than the 4-year statute which governed fraud, applied to an action against a physician for fraudulently concealing the cause and nature of a patient's condition. All the statements and acts complained of occurred during the physician-patient relationship. We stated:

We do not think that the advice and the statements of a physician as to the nature and cause of a patient's condition, as a part of the necessities of treating and consulting with the patient, are separable. *They are the essentials to the performance of the physician's whole duty to the patient.* We do not think that the Legislature, when it enacted the special limitation statute of 2 years on malpractice intended to separate certain portions of the whole physician-patient relationship and apply a confusing standard of 2 and 4 years to different portions of that relationship, or to require the courts to make such a nebulous and difficult fact separation and determination.

(Emphasis supplied.) *Id.* at 697, 131 N.W.2d at 165.

More recently, we have held that the professional negligence statute of limitations applies to a claim against a physician for misrepresentation of the effects of x-ray treatment for chronic asthma, saying, "[A]ny professional misconduct or any unreasonable lack of skill or fidelity in the performance of professional or fiduciary duties is 'malpractice' and comes within the professional or malpractice statute of limitations." *Colton v. Dewey*, 212 Neb. 126, 131-32, 321 N.W.2d 913, 917 (1982). In *Jones v. Malloy*, 226 Neb. 559, 412 N.W.2d 837 (1987), we held that the malpractice statute of limitations, rather than that relating to battery, applied to a claim against a

physician for failure to obtain the patient's consent to medical treatment.

A similar fact situation to the present case was considered in *Stanley v. Lebetkin*, 123 A.D.2d 854, 507 N.Y.S.2d 468 (1986). There, the plaintiff fractured her ankle while alighting from the defendant physician's examining table. The New York court held that the plaintiff's action against the physician to recover damages for personal injury was one for malpractice, not simple negligence, and thus was governed by the malpractice statute of limitations. The court said:

> [The plaintiff's] allegations establish that the duty the defendant is charged with violating arose from the physician-patient relationship and was substantially related to his treatment of the plaintiff. Had the plaintiff not consulted the defendant in his capacity as a physician, there would have been no reason for her to be on his examining table in the first place. It was only his awareness of her complaints, acquired in the course of that relationship, when coupled with his knowledge as a physician, which would give rise to a duty to assist her on or off the table, or to keep her "under constant surveillance *in view of her complaints*" (emphasis supplied). Such acts, if negligent, constitute malpractice . . . .

*Id.* at 855, 507 N.Y.S.2d at 469.

It can only be inferred from Olsen's averments that when the alleged act of negligence occurred, Richards was positioning Olsen for the purpose of rendering her a service in his role as her physician.

As in *Swassing v. Baum*, 195 Neb. 651, 240 N.W.2d 24 (1976), a physician-patient relationship existed between Richards and Olsen which was the stimulus for the examination, and the examination was an essential and integral part of the physician's rendition of professional services. As stated in *Stacey v. Pantano, supra*, when the Legislature enacted the special limitation statute of 2 years on malpractice, it did not intend to separate certain portions of the whole physician-patient relationship and apply a confusing standard of 2 and 4 years to different portions of that relationship, or to

require the courts to make such a nebulous and difficult fact separation and determination.

Thus, the 4-year ordinary negligence statute of limitations does not apply to the action Olsen has pled. Inasmuch as her action is time barred irrespective of which, if not both, of the two shorter statutes govern, we need not and therefore do not concern ourselves with the nicety of distinguishing between the spheres within which each of those statutes operates.

If a petition alleges a cause of action ostensibly barred by the statute of limitations and fails to allege some excuse tolling the operation and bar of the statute, the petition fails to allege sufficient facts to constitute a cause of action and is subject to a demurrer. *Ames v. Hehner*, 231 Neb. 152, 435 N.W.2d 869 (1989). Since Olsen pled no excuse tolling the operation of the relevant statute of limitations, the judgment of the district court is correct.

AFFIRMED.