NORTH BEND SENIOR CITIZENS HOME, INC., ASSIGNEE, APPELLANT, v. CHERYLL COOK, ALSO KNOWN AS CHERYLL WEBER, APPELLEE.
623 N.W. 2d 681

Filed March 30, 2001.   No. S-99-1375.

James L. Haszard and Stephanie R. Hupp, of McHenry, Haszard, Hansen & Roth, for appellant.

L.J. Karel, of Karel & Seckman, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

North Bend Senior Citizens Home, doing business as Birchwood Manor (Manor), as assignee, brought an action against Cheryll Weber, also known as Cheryll Cook (Cook), to recover over $83,000 Cook allegedly converted while acting as power of attorney for Laura Duda, a resident of the Manor. Duda assigned her claim against Cook to the Manor.

The district court granted summary judgment in favor of Cook, determining that the assignment from Duda to the Manor was void as against public policy. The Manor appeals, claiming the district court erred in determining that the assignment was void. We moved this case to our docket pursuant to our power to regulate the Nebraska Court of Appeals' caseload and that of this court. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## FACTUAL BACKGROUND

On December 7, 1990, Duda, age 90, executed a power of attorney in favor of her grandniece, Cook. In 1991, Duda became a resident of the Manor. Beginning in 1991 and during 1992, Cook wrote checks on Duda's bank accounts totaling $83,255.04, expending the money for Cook's personal use.

Despite Cook's frequent use of Duda's bank accounts for Cook's own personal benefit, Cook failed to pay Duda's nursing home bills. Duda's account with the Manor first became delinquent in August 1992. Donald Hruza, administrator of the Manor, contacted Cook on several occasions regarding the delinquent account. The Manor last received payment from Cook on Duda's account in May 1993. By February 24, 1994, Duda's unpaid account at the Manor amounted to $19,420.62. In April 1994, Cook applied for public assistance on Duda's behalf, and the Manor began receiving medicaid funds for Duda's care.

Shortly after Cook applied for public assistance for Duda in 1994, the Manor became suspicious of Cook's actions regarding Duda's funds due to statements Cook made to a social worker while applying for public assistance on Duda's behalf. The

Manor began investigating banking transactions involving Duda's accounts and discovered that Cook had been utilizing funds from Duda's bank accounts for Cook's own personal use.

On January 30, 1998, Hruza and Rodney Johnson, the Manor's attorney, presented to Duda a document entitled "Assignment," which assigned to the Manor Duda's "entire interest . . . in any debt due to her from Cheryll Cook and in any claim she may have for recovery of funds taken from her by Cheryll Cook." Duda signed the document.

On March 30, 1998, the Manor, as assignee, filed an action against Cook, seeking to recover the $83,255.04 of Duda's funds that Cook had used for her own personal use. By June 1999, Duda's unpaid nursing home bill amounted to $23,344.69.

On September 29, 1999, the Manor filed a motion for partial summary judgment. In its motion, the Manor sought judgment as a matter of law, asserting that Cook, acting as Duda's attorney in fact, used Duda's funds for her own personal benefit and that those funds had not been repaid by Cook. On September 30, Cook filed a motion for summary judgment.

At the October 13, 1999, hearing on these motions several exhibits were admitted into evidence, including the depositions of Cook, Duda, and Hruza. Included as exhibits in these depositions were the assignment signed by Duda, documentation of Duda's nursing home bills, the application for public assistance Cook filled out on Duda's behalf, and a list of various checks written on Duda's bank accounts documenting the $83,255.04 of Duda's funds that Cook had used for her own personal benefit.

In her deposition, Cook stated that from 1990 to 1994, acting as Duda's power of attorney, she met with Duda approximately once a month to discuss Duda's finances. Cook admitted to using nearly all of the $83,255.04 for her own personal use and could not account for the amounts that she had not specifically admitted to using for personal use. However, Cook claimed the amounts withdrawn from Duda's bank accounts and used for Cook's personal benefit were gifts made with Duda's permission. The power of attorney instrument did not specifically provide that Cook could make gifts to herself from Duda's property. Cook admitted that she had not repaid any of this money to Duda. Cook also admitted that when she applied for public

assistance for Duda in 1994, Duda "was out of money, zero, at that point." When Cook was deposed on June 9, 1999, she had not seen Duda for approximately 1 year.

An affidavit from Johnson, the Manor's attorney, was also admitted into evidence. In the affidavit, Johnson stated that he prepared the assignment dated January 30, 1998. He stated that he had previously discussed the assignment with Duda on two occasions, September 19 and October 20, 1997. Johnson stated that on September 19, Duda "appeared to understand the meaning of the Assignment and the actions she was taking." However, Johnson stated that when he discussed the assignment with Duda on October 20, he informed Duda that he believed that Cook had used Duda's funds for purposes other than for Duda's benefit. Duda responded that "she didn't know anything about that." Johnson stated that when he explained the assignment to Duda on January 30, 1998, and Duda signed the assignment, Duda "appeared to understand the document and what she was doing."

In his deposition, Hruza stated that he has known Duda since she became a resident at the Manor and that he sees Duda on a regular basis. Hruza discussed Duda's nursing home bills and also testified that he was present when Duda signed the assignment on January 30, 1998. He testified that when Duda signed the assignment, she was " 'upset' because of what the niece [Cook] had done to her in reference to her property." However, Hruza also stated, "I do not remember her [Duda] ever mentioning dollars, because I do not believe that she knew that she had dollars, one way or the other, whether it was ten dollars or whatever it was, it didn't make her any [sic] difference."

Evidence regarding Duda's mental condition was also admitted at the hearing. The Manor's psychological records on Duda, dating from 1994 to 1998, indicated that Duda's concentration, memory, place and time orientation, and self-care functioning were impaired to some degree, ranging from mild to severe impairment. Also admitted into evidence was a request the Manor submitted to the Social Security Administration on June 21, 1994, requesting that the Supplemental Security Income benefits that Duda was receiving be paid to the Manor as representative payee. This request stated that Duda "needs a payee because she cannot understand the value of money."

Duda's deposition was taken on June 16, 1999. During the deposition, Duda, who was 99 years old at the time, stated that she was 93 years old. She stated that she knew "Cheryll Weber" was her relative, but did not know how she and Weber (Cook) were related. Duda believed that "Cheryll Weber" and "Cheryll Cook" were two different people. When asked if she had appointed Cook as her power of attorney, Duda stated, "I don't know anything about that." When shown a copy of the power of attorney, Duda did not know what it was. Duda stated that Cook did not pay any bills for Duda or write any checks for Duda and that Duda did not have any bills. When shown a copy of the assignment, Duda did not know what it was. When asked if her signature appeared on the assignment, Duda responded, "I don't remember. I don't know. Don't bother me any more."

On November 8, 1999, the district court denied the Manor's motion for partial summary judgment and granted Cook's motion for summary judgment. The district court determined that as a matter of law, Duda's claim against Cook was not assignable, extending our holding in *Earth Science Labs. v. Adkins & Wondra, P.C.*, 246 Neb. 798, 523 N.W.2d 254 (1994), in which we determined that attorney malpractice claims are not assignable due to the highly personal and confidential relationship between attorney and client.

The district court relied on a combination of three cases, *Earth Science Labs., supra*; *Community First State Bank v. Olsen*, 255 Neb. 617, 587 N.W.2d 364 (1998); and *Olsen v. Richards*, 232 Neb. 298, 440 N.W.2d 463 (1989), in determining that the assignment was void. The district court first determined that under *Earth Science Labs.*, the "critical element" in determining whether a claim is assignable is whether the claim involves a "highly personal and confidential relationship." The district court then determined that there was no genuine issue of material fact that the relationship between Cook and Duda was highly personal and confidential. The court next determined that, essentially, this action was an action for breach of fiduciary duties. The district court, citing *Community First State Bank, supra*, and *Olsen, supra*, then stated, "The Nebraska Supreme Court has ruled that where an action is one for breach of fiduciary duty, the cause of action is not assignable." Based on these

cases, the district court sustained Cook's motion for summary judgment, determining that Duda's claim against Cook was not assignable as a matter of law and that the assignment was void as against public policy. The Manor appeals.

## ASSIGNMENTS OF ERROR

The Manor claims, summarized and rephrased, that the district court erred in (1) finding the assignment void as a matter of law and granting summary judgment to Cook on that basis, (2) finding that the relationship between Cook and Duda was "highly personal and confidential," and (3) denying the Manor's motion for partial summary judgment.

## STANDARD OF REVIEW

■ In reviewing an order of summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Olsen v. Farm Bureau Ins. Co.*, 259 Neb. 329, 609 N.W.2d 664 (2000).

■ When reviewing questions of law, an appellate court has an obligation to resolve the question independently of the conclusion reached by the trial court. *Doksansky v. Norwest Bank Neb.*, 260 Neb. 100, 615 N.W.2d 104 (2000).

## ANALYSIS

The Manor first claims the district court erred in determining that the assignment was void as against public policy and granting summary judgment to Cook on that basis. The district court determined that the claim was not assignable as a matter of law, extending our holding in *Earth Science Labs., supra*, to fiduciary relationships other than the attorney-client relationship. The issue in this case is whether the "nonassignability rule" set forth in *Earth Science Labs.* should be extended to preclude assignment of a cause of action against an attorney in fact for conversion of the principal's funds.

This court first determined in *Earth Science Labs. v. Adkins & Wondra, P.C.*, 246 Neb. 798, 523 N.W.2d 254 (1994), that attorney malpractice claims are not assignable due to public policy considerations. In *Earth Science Labs.*, a bankrupt corporation

assigned its claim for attorney malpractice to its successor corporation. The successor corporation, as assignee, brought a malpractice action against the attorney. We determined that attorney malpractice claims are not assignable due to the highly personal and confidential relationship between attorney and client.

In *Community First State Bank v. Olsen*, 255 Neb. 617, 587 N.W.2d 364 (1998), we applied the nonassignability rule set forth in *Earth Science Labs.* to determine that claims for malpractice and breach of fiduciary duties arising out of an attorney-client relationship are not assignable. In *Community First State Bank*, Abbott Bank assigned a claim for malpractice against its attorney to Community First State Bank. Community First State Bank, as assignee, then filed an action against the attorney for attorney malpractice and breach of fiduciary duty. We determined that based on our ruling in *Earth Science Labs.*, the malpractice claim was not assignable "because of public policy considerations concerning the personal nature and confidentiality of the attorney-client relationship." *Community First State Bank*, 255 Neb. at 622, 587 N.W.2d at 368. As to the breach of fiduciary duty claim which arose out of the attorney-client relationship, we stated:

> This court has held that any professional misconduct or any unreasonable lack of skill or fidelity in the performance of professional or fiduciary duties is malpractice. *Olsen v. Richards*, 232 Neb. 298, 440 N.W.2d 463 (1989). Although *Olsen v. Richards, supra*, interpreted Neb. Rev. Stat. § 25-222 (Reissue 1995), which sets the statute of limitations for professional negligence claims, we see no reason why claims for breach of fiduciary duties should not be similarly classified for purposes of the rule against assigning malpractice claims.

*Community First State Bank*, 255 Neb. at 623-24, 587 N.W.2d at 368. The district court in the present case relied upon this language in determining that Duda's cause of action against Cook was not assignable.

*Olsen v. Richards*, 232 Neb. 298, 440 N.W.2d 463 (1989), the case cited in *Community First State Bank*, was a statute of limitations case and did not involve the application of the nonassignability rule. In *Olsen*, the defendant doctor forcefully

slammed the headrest of an examination chair down on the plaintiff's neck during the course of performing an examination on the plaintiff, and the plaintiff was injured. The plaintiff asserted that the 4-year ordinary negligence statute of limitations applied to the claim, while the doctor asserted that the 2-year professional negligence statute of limitations applied. In determining that the 2-year statute of limitations applied, we stated, " '[A]ny professional misconduct or any unreasonable lack of skill or fidelity in the performance of professional or fiduciary duties is "malpractice" and comes within the professional or malpractice statute of limitations.' " *Id.* at 301, 440 N.W.2d at 465. The first portion of this sentence was then used in *Community First State Bank* in determining that a claim for breach of fiduciary duties which arose out of an attorney-client relationship is not assignable.

Contrary to the district court's interpretation, this court did not hold in *Community First State Bank* that *any* claim for breach of fiduciary duties is not assignable. The nonassignability rule set forth in *Earth Science Labs. v. Adkins & Wondra, P.C.*, 246 Neb. 798, 523 N.W.2d 254 (1994), and applied in *Community First State Bank* does not extend to all personal and confidential relationships or to all fiduciary relationships. In *Earth Science Labs.*, we stated that attorney malpractice claims are not assignable "based on public policy considerations concerning 'the uniquely personal nature of legal services and the contract out of which a highly personal and confidential *attorney-client relationship* arises.' " (Emphasis supplied.) 246 Neb. at 800, 523 N.W.2d at 256, quoting *Goodley v. Wank & Wank, Inc.*, 62 Cal. App. 3d 389, 133 Cal. Rptr. 83 (1976). Legal malpractice claims involve matters of personal trust and confidence and do not lend themselves to assignability because permitting the transfer of such claims would undermine the attorney-client relationship. *Earth Science Labs., supra. Earth Science Labs.* does not provide that claims arising from any personal and confidential relationship are not assignable. In *Community First State Bank v. Olsen*, 255 Neb. 617, 587 N.W.2d 364 (1998), this court determined that a claim for breach of fiduciary duties arising out of an attorney-client relationship is similarly within the rule of nonassignability. We

have never held that *all* claims for breach of fiduciary duty are not assignable.

Cook, however, claims that the nonassignability rule was properly extended by the district court in determining that a cause of action arising out of the relationship between Duda and Cook was not assignable. Cook argues that the relationship between Duda and Cook is sufficiently similar to an attorney-client relationship to justify extending the nonassignability rule to such relationships. The Manor claims the district court erred in extending the nonassignability rule to the situation in the present case. The Manor argues that the relationship between Cook and Duda was simply an agency relationship which does not possess the unique characteristics of the personal and confidential attorney-client relationship.

Cook acquired the authority to handle Duda's accounts through Duda's execution of a power of attorney. A power of attorney is an instrument in writing authorizing another to act as one's agent. *In re Estate of Lienemann*, 222 Neb. 169, 382 N.W.2d 595 (1986). The agent holding the power of attorney is termed an "attorney in fact" as distinguished from an attorney at law. *Id.* Because the power of attorney creates an agency relationship, the authority and duties of an attorney in fact are governed by the principles of the law of agency. *Id.* An agency is a fiduciary relationship resulting from one person's manifested consent that another may act on behalf and subject to the control of the person manifesting such consent, and further resulting from another's consent to so act. *Andrews v. Schram*, 252 Neb. 298, 562 N.W.2d 50 (1997).

Cook classifies the Manor's claim against her as a claim for "malpractice," and relying on the language of *Community First State Bank*, asserts that such a claim is not assignable. Malpractice is defined as "[a]n instance of negligence or incompetence on the part of a professional." Black's Law Dictionary 971 (7th ed. 1999).

The claim against Cook that Duda assigned to the Manor is not a malpractice claim. Cook was not in a professional capacity when acting as Duda's attorney in fact. Cook is simply Duda's grandniece, whom Duda appointed as her power of attorney. Cook was not rendering any professional services to Duda due to

her position as Duda's attorney in fact. The claim against Cook for her conversion of Duda's funds did not arise out of any professional negligence or incompetence. The claim arose due to Cook's utilization of Duda's funds in a fashion the Manor contends was not authorized by the power of attorney instrument.

The agency relationship between Duda and Cook is not sufficiently similar to that of attorney and client to justify extending the nonassignability rule to a claim against an attorney in fact who wrongfully converts the principal's funds. The public policy reasons behind the nonassignability rule stem from the unique qualities of the attorney-client relationship, which are not present in the relationship between a principal and his or her attorney in fact.

The "confidential relationship" involved in *Earth Science Labs. v. Adkins & Wondra, P.C.*, 246 Neb. 798, 523 N.W.2d 254 (1994), and *Community First State Bank v. Olsen*, 255 Neb. 617, 587 N.W.2d 364 (1998), was the "unique" and "highly personal and confidential *attorney-client relationship.*" Among the unique characteristics of the attorney-client relationship is that attorney-client communications are confidential and privileged from disclosure. In determining that a "confidential relationship" existed between Cook and Duda, the district court relied upon *Schaneman v. Schaneman*, 206 Neb. 113, 125-26, 291 N.W.2d 412, 420 (1980), which defined a confidential relationship in the following manner: " '[A confidential] relationship exists between two persons if one has gained the confidence of the other and purports to act or advise with the other's interest in mind,' " quoting *Boettcher v. Goethe*, 165 Neb. 363, 85 N.W.2d 884 (1957). However, the court in *Schaneman* was defining the term "confidential relationship" for the purpose of determining whether a prima facie case of undue influence had been established. The attorney-client relationship is "confidential" not only in the sense that the attorney may "act or advise" with the client's interests in mind, but also in the sense that communications between attorney and client are privileged from disclosure to outside parties. Communications between a principal and his or her attorney in fact are not so privileged.

A claim for legal malpractice cannot be assigned because of public policy considerations concerning the personal nature and

confidentiality of the attorney-client relationship. *Community First State Bank, supra; Earth Science Labs., supra.* The public policy reasoning behind the nonassignability rule for legal malpractice claims is that " 'permitting the transfer of such claims would undermine the important relationship between an attorney and client.' " *Earth Science Labs.*, 246 Neb. at 802, 523 N.W.2d at 257. Cook argues that allowing causes of action for conversion arising out of the relationship between a principal and his or her attorney in fact to be assigned is contrary to public policy because it "would undermine the confidentiality and the exchange of information necessary between those two parties to the end that the attorney in fact could not best carry out the required duties." Brief for appellee at 15. This argument is unpersuasive due to the differing nature of the attorney-client relationship and the principal-agent relationship created by a power of attorney.

Confidential disclosure of information is essential in the attorney-client relationship so that the client will reveal information to the attorney, enabling the attorney to properly represent his or her client in legal matters. In contrast, the power of attorney Duda executed simply gives Cook the authority to conduct Duda's personal and business affairs during any period in which Duda is "disabled, incompetent or incapacitated." As attorney in fact, Cook was acting in Duda's place because Duda was not able to conduct her affairs. There is no indication that any exchange of confidential information was necessary between Cook and Duda to enable Cook to properly carry out her duties as attorney in fact. The proper functioning of the relationship between principal and attorney in fact is not dependent upon the open "exchange of information" as is the attorney-client relationship.

We determine that the nonassignability rule set forth in *Earth Science Labs. v. Adkins & Wondra, P.C.*, 246 Neb. 798, 523 N.W.2d 254 (1994), is not applicable to a claim arising out of the conversion of a principal's funds by an attorney in fact. The public policy considerations underlying nonassignability of attorney malpractice claims are not present in the relationship between a principal and attorney in fact. Therefore, the trial court erred in granting Cook's motion for summary judgment.

The Manor also assigns as error the trial court's finding that the relationship between Cook and Duda was highly personal and confidential. However, we have determined that the nonassignability rule does not apply outside the highly personal and confidential *attorney-client relationship* and that there was no attorney-client relationship between Cook and Duda. Therefore, we need not address the question of whether the relationship between Cook and Duda was highly personal and confidential.

However, our determination that the nonassignability rule does not apply to the assignment in this case does not determine the question of whether the assignment is valid. In its order, the trial court recognized that an issue existed as to "whether Ms. Duda was competent at the time the assignment to [the Manor] was executed." The district court also noted that the Manor was seeking "judgment in an amount greatly in excess of the underlying debt." The district court did not make a determination regarding the impact of either of these issues on the validity of the assignment. An appellate court will not consider an issue on appeal that was not passed upon by the trial court. *Prucha v. Kahlandt*, 260 Neb. 366, 618 N.W.2d 399 (2000). Therefore, this case must be remanded for further proceedings on the issue of the validity of the assignment.

The Manor claims the district court erred in denying its motion for partial summary judgment. The Manor asserts that because the power of attorney Duda executed does not authorize Cook to make gifts to herself, Cook's use of Duda's funds for her own personal use constitutes conversion as a matter of law. The Manor further asserts that it is entitled to summary judgment on the issue of Cook's liability to the Manor due to such improper conversion of Duda's funds.

Although the denial of a motion for summary judgment is normally not a final, appealable order, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions. *State Farm Mut. Auto. Ins. Co. v. Cheeper's Rent-A-Car*, 259 Neb. 1003, 614 N.W.2d 302 (2000). Thus, under the circumstances of this case, the Manor may appeal the denial of its motion for summary judgment. However, the Manor's legal capacity to bring this suit is dependent upon

its status as Duda's assignee. Cook is not liable to the Manor for the allegedly converted funds unless the assignment is valid. Because the validity of the assignment has yet to be determined, summary judgment in favor of the Manor cannot be granted on the issue of Cook's liability to the Manor for the allegedly converted funds.

## CONCLUSION

For the above-stated reasons, the decision of the district court is reversed and the cause is remanded for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.