764 N.W.2d 96 (2009)
277 Neb. 622
Mary BURNISON, appellant,
v.
Kathleen JOHNSTON, appellee.
No. S-08-406.
Supreme Court of Nebraska.
April 17, 2009.
*97 William M. Lamson, Jr., and Craig F. Martin, of Lamson, Dugan & Murray, L.L.P., Omaha, for appellant.
Ronald E. Reagan, of Reagan Law Offices, P.C., L.L.O., for appellee.
WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.

SUMMARY
We are asked to decide whether a law firm can assign its right to collect unpaid legal fees. The law firm assigned its claim to the appellant, Mary Burnison. Burnison filed an action seeking recovery of the fees from appellee, Kathleen Johnston, and in response, Johnston raised several defenses. After trial, the district court dismissed Burnison's claims because it concluded that she lacked standing to bring the action. The court reasoned that the law firm had impermissibly assigned personal legal services. We reverse, and remand with directions because the law firm did not assign a duty to perform legal services. We further conclude that public policy does not bar assignment of a right to collect unpaid legal fees.

BACKGROUND
Since 1994, the law firm Martin & Martin, P.C., had provided legal services to Johnston and her husband regarding their real estate holdings. In October 2001, the firm assigned to Burnison "all right, title, and interest in any cause of action arising from legal services that MARTIN & MARTIN, P.C. rendered to ... Johnston[,] at her request from May 1, 1996 through February 25, 1998."
Burnison filed a complaint against Johnston, seeking recovery of unpaid legal fees for services provided by the assignor. She alleged breach of oral contract and quantum meruit theories of recovery. Burnison alleged that (1) the firm had performed legal services for Johnston in 1996 and 1997; (2) she only sporadically paid for some of these services; and (3) despite demand for payment, she owed $76,323 in legal fees and $32,918 in interest.
In her answer, Johnston denied that Burnison was the real party in interest or that any contract existed between her and the firm. Her answer included a litany of affirmative offenses. She alleged that (1) the firm's services were provided for another *98 party; (2) the claims for payment resulted from fraud; and (3) the statute of limitations barred the claims. She admitted that the firm had performed work for her. But she alleged that (1) its legal work violated the law and ethical standards for attorneys; (2) its performance was contrary to the standard of professional care for attorneys in Nebraska; and (3) the firm "fraudulently performed" because the attorneys had advised her to take actions that were illegal and which subjected her to legal liability and loss of property. She also alleged that the firm had fraudulently listed charges and payment on her account to defeat the statute of limitations.
At trial, the parties stipulated that the firm's hourly rate was fair. But Johnston disputed whether the firm provided services for her and whether the services were of any value to her. In addition, she contended that some of the assignor's actions were unethical, which she alleged precluded the assignee's recovery of unpaid legal fees.
In its order, the court concluded that Burnison lacked standing as an assignee to seek recovery of the unpaid legal fees. It ruled that the assignment upon which she relied was an improper attempt to assign personal legal services. It reasoned that the language in the firm's assignment to Burnison was too broad because it assigned a cause of action instead of an unpaid fee.

ASSIGNMENT OF ERROR
Burnison assigns that the district court erred in ruling that a claim for the collection of legal fees is nonassignable.

STANDARD OF REVIEW
The court determined that because the firm's claim was nonassignable, Burnison did not have standing in the action. In other words, it determined that she was not the real party in interest.[1] Whether a party who commenced an action had standing and was therefore the real party in interest presents a jurisdictional issue.[2] A jurisdictional issue that does not involve a factual dispute presents a question of law, which we independently decide.[3]

ANALYSIS
Burnison contends that Nebraska law permits an assignment of a claim for unpaid legal fees and that our cases on the nonassignability of malpractice claims are not controlling. She argues that none of the public policy considerations that prohibit the assignment of legal malpractice claims are present when an attorney assigns a claim to collect unpaid legal fees for services already provided. She distinguishes a legal malpractice claim as a tort action resting on the attorney's personal fiduciary duty to provide professional services to a client. She argues that in contrast to a malpractice claim, a claim to collect unpaid legal fees is a contract action that does not involve a duty to provide personal services. In brief, she argues that "the duty to professionally provide legal services is personal; the duty to pay for that service which has already been performed is not."[4]
At the outset, we note that a likely stumbling block here was the failure of our case law to consistently use the proper terminology to discuss the transfer of contractual rights and its duties. Unless a *99 party transfers both its rights and its duties under a contract, it is important to distinguish between the assignment of contractual rights and the delegation of performance of a duty.[5] Although the court stated that the firm had impermissibly attempted to assign personal legal services, it apparently meant that the firm had impermissibly attempted to delegate performance of its duty to provide legal services.
But this case does not involve delegation of performance of a duty under a contract for personal services. And Johnston admits that the firm did not delegate any obligation to perform legal services for her. We conclude that the district court erred in finding that the firm had attempted to delegate performance of its duty to provide legal services. Here, the firm assigned only its contractual right to receive Johnston's payment for services rendered. But Johnston argues that public policy prohibited the firm's assignment and that we should therefore affirm the court's judgment even if its reasoning was incorrect.[6]
We have held that a contractual right to the benefit of a promise cannot be assigned if the obligor reasonably intended for the right to be exercised only by the party with whom it contracted. The rule usually applies when a promise involves a relationship of personal trust or confidence or the obligor has expectations of counter-performance.[7] Otherwise, contractual rights are generally assignable unless the terms validly preclude assignment or the assignment is contrary to statute or public policy.[8]
In Peterson v. Hynes,[9] we affirmed a party's right to assign a claim for unpaid fees under a contract to provide personal services. There, the buyers of stock in a bank holding company promised in an addendum to the purchase agreement that they would hire the sellers as consultants and pay them specified fees for a defined period. But the buyers never allowed the sellers to provide consulting services and paid them only a fraction of the promised fees. The sellers assigned their claim to recover the unpaid fees under the agreement. On appeal, the buyers argued that they were not liable because the sellers could not assign their contractual rights. We noted that the sellers had not delegated their obligation to perform consulting services. We held that a right to receive money under a contract may be assigned
"unless there is something in the terms of the contract manifesting the intention of the parties that it shall not be assigned. This is true of money due or to become due under a contract involving personal skill, service, or confidence; the party who has performed such obligations, or who has contracted to do so, *100 may assign his right to the money earned or which he is to earn, although the contract itself is not assignable."[10]
Johnston acknowledges our holding in Peterson. But she contends that the firm's assignment was against public policy. She argues that Burnison must prove the value of the firm's services and its compliance with professional responsibility requirements.[11] Because she has malpractice defenses to the firm's claim for unpaid fees, she argues that the same public policy concerns that prohibit the assignment of attorney malpractice claims apply here. We disagree.
Johnston cites no case holding that such an assignment violates public policy. It is true that an assignee's rights are no greater than the assignor's[12] and that Burnison must prove the value of its services and compliance with professional standards. And it is not uncommon for clients to allege counterclaims of legal malpractice in response to actions to recover unpaid legal fees.[13] But Johnston's reliance on the public policy reasons for prohibiting the assignment of tort claims for legal malpractice is misplaced. Assignments of malpractice claims are prohibited to avoid undermining the duty of confidentiality and other professional duties that arise from the client-attorney relationship.[14] Those public policy concerns are not present here.
As Burnison points out, we have previously affirmed a money judgment against a firm's former client in an action brought by a bank after the firm assigned all its accounts receivable to the bank as security for a loan.[15] Johnston, however, argues that the defendant did not raise the assignment's validity. But we would have addressed the jurisdictional issue of standing if we had considered the assignment invalid.[16] We conclude that public policy does not prohibit an attorney's assignment of a claim for unpaid legal fees simply because a client might raise malpractice defenses. Johnston's defenses against the assigned claim are not defenses against the assignment itself and did not prevent Burnison from attempting to enforce her interest.[17]
Finally, we reject Johnston's contention that the firm assigned more than a claim to collect unpaid legal fees. Johnston does not identify any other cause of action that would have supported Burnison's claim to *101 recover a money judgment from Johnston apart from her alleged failure to pay money owed for legal services.[18]
We conclude that the district court erred in concluding that Burnison lacked standing because the firm had impermissibly attempted to delegate personal legal services. We further conclude that public policy does not prohibit an attorney's assignment of a claim for unpaid legal fees when the former client defends with allegations of malpractice. Accordingly, we reverse the judgment of the district court and remand the cause with directions to the district court to make the necessary findings of fact and conclusions of law and decide the remaining issues.
REVERSED AND REMANDED WITH DIRECTIONS.
HEAVICAN, C.J., not participating.
NOTES
[1] See Stevens v. Downing, Alexander, 269 Neb. 347, 693 N.W.2d 532 (2005).
[2] See id.
[3] See id.
[4] Brief for appellant at 9 (emphasis omitted).
[5] See, Restatement (Second) of Contracts §§ 317 and 318 (1981); 3 E. Allan Farnsworth, Farnsworth on Contracts § 11.1 (3d ed. 2004).
[6] See In re Estate of Lamplaugh, 270 Neb. 941, 708 N.W.2d 645 (2006).
[7] See Schupack v. McDonald's System, Inc., 200 Neb. 485, 264 N.W.2d 827 (1978). See, also, 29 Samuel Williston, A Treatise on the Law of Contracts § 74:10 (Richard A. Lord ed., 4th ed. 2003).
[8] See, Eli's, Inc. v. Lemen, 256 Neb. 515, 591 N.W.2d 543 (1999); Schupack, supra note 7; Aronsohn v. Mandara, 98 N.J. 92, 484 A.2d 675 (1984); International Collectors v. Mazel Co., 48 Wash.App. 712, 740 P.2d 363 (1987). Accord, Restatement, supra note 5, § 317; Williston, supra note 7.
[9] Peterson v. Hynes, 220 Neb. 573, 371 N.W.2d 664 (1985).
[10] Id. at 577, 371 N.W.2d at 667, quoting 6 Am.Jur.2d Assignments § 16 (1963). See, also, Restatement, supra note 5, § 317, comment d.
[11] See Hauptman, O'Brien v. Turco, 273 Neb. 924, 735 N.W.2d 368 (2007).
[12] Mid-America Appliance Corp. v. Federated Finance Co., 172 Neb. 270, 109 N.W.2d 381 (1961).
[13] See, e.g., Manci v. Ball, Koons & Watson, 995 So.2d 161 (Ala.2008); Wolfe v. Wolf, 375 Ill.App.3d 702, 874 N.E.2d 582, 314 Ill.Dec. 486 (2007); Zabin v. Picciotto, 73 Mass.App. 141, 896 N.E.2d 937 (2008); Kutner v. Catterson, 56 A.D.3d 437, 867 N.Y.S.2d 156 (2008); Riley v. Montgomery, 11 Ohio St.3d 75, 463 N.E.2d 1246 (1984).
[14] See, North Bend Senior Citizens Home v. Cook, 261 Neb. 500, 623 N.W.2d 681 (2001); Earth Science Labs. v. Adkins & Wondra, P.C., 246 Neb. 798, 523 N.W.2d 254 (1994). See, also, Gurski v. Rosenblum and Filan, LLC, 276 Conn. 257, 885 A.2d 163 (2005); Kracht v. Perrin, Gartland & Doyle, 219 Cal.App.3d 1019, 268 Cal.Rptr. 637 (1990); Annot., 40 A.L.R. 4th 685 (1985).
[15] See Vistar Bank v. Thompson, 253 Neb. 166, 568 N.W.2d 901 (1997).
[16] See In re Estate of Chrisp, 276 Neb. 966, 759 N.W.2d 87 (2009).
[17] See Vistar Bank, supra note 15.
[18] See, generally, Poppert v. Dicke, 275 Neb. 562, 747 N.W.2d 629 (2008).