# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1894
_____

E3 Biofuels, LLC

*Plaintiff - Appellant*

v.

Biothane, LLC, successor in interest and liability to Biothane Corporation;
Perennial Energy, Inc.

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: November 13, 2014
Filed: March 25, 2015
_____

Before RILEY, Chief Judge, BEAM and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

After a boiler explosion, E3 Biofuels, LLC ("E3") sued Biothane, LLC and
Perennial Energy, Inc. ("PEI"). The district court[1] granted summary judgment to

---

[1]The Honorable Laurie Smith Camp, Chief Judge, United States District Court
for the District of Nebraska.

Biothane and PEI. After finding that diversity jurisdiction existed, the court held that Nebraska's two-year statute of limitations for professional negligence barred all of E3's claims. We affirm.

I.

In 2005 one of E3's predecessors in interest began construction of an ethanol plant in Mead, Nebraska. The plant was to be powered, at least in part, by methane. To generate electricity from the gas, E3's predecessor contracted with Biothane for a boiler system. The Boiler Purchase Order explained that Biothane would supply two boilers and integrate them into the plant:

> Biothane will supply, start-up, and warrant the boiler system and controls as well as manage and take responsibility for integration of the boiler into the biogas handling system for a lump sum price of $1,450,000. This lump sum price includes . . . the design engineering services necessary to integrate the boiler into the overall biogas management system.

Biothane, an expert in systems integration but not in boilers specifically, subcontracted with PEI to install and integrate the boilers. Biothane retained overall responsibility. Both Biothane and PEI are engineering companies.

In February 2007, PEI engineer Ted Landers repeatedly tried and failed to light the main flame of one of the boilers. The repeated attempts caused gas to build up and eventually explode. E3 claims that the boiler never worked properly afterward and that the plant failed as a result.

The plant's owners eventually reorganized in bankruptcy. A company called AltEn, LLC ended up owning the plant, including the boiler. At the request of an

appointed bankruptcy trustee, the bankruptcy court assigned the legal claims stemming from the explosion to E3.

In 2011—3 years and 364 days after the explosion—E3 sued Biothane and PEI, alleging various torts against both and breach of contract against Biothane. Rejecting a jurisdictional challenge by PEI, the district court first found that the parties were diverse. The court then granted summary judgment to Biothane and PEI. The court concluded that all of E3's claims were time-barred under Neb. Rev. Stat. § 25-222, Nebraska's two-year statute of limitations for actions based on professional negligence. E3 appealed.

## II.

On appeal, PEI again challenges the district court's subject-matter jurisdiction. E3 then argues that its suit was timely under any of five potentially applicable Nebraska statutes of limitations and that one of these statutes, not § 25-222, controls. We begin with the jurisdictional question. After that, we consider Nebraska limitations law, which the parties agree applies. In Nebraska, when two "equally applicable" limitations periods cover the same claim, the longer controls. *Georgetowne Ltd. P'ship v. Geotechnical Servs., Inc.*, 430 N.W.2d 34, 38-39 (Neb. 1988). Accordingly, we determine whether § 25-222 covers E3's claims; that is, whether Biothane and PEI were "professional[s] . . . acting in professional capacit[ies]" with respect to the boiler. *See Churchhill v. Columbus Cmty. Hosp., Inc.*, 830 N.W.2d 53, 56 (Neb. 2013). We then consider whether any of E3's proposed alternative statutes displaces § 25-222.

## A.

We review issues of subject-matter jurisdiction *de novo*. *Slater v. Republic-Vanguard Ins. Co.*, 650 F.3d 1132, 1134 (8th Cir. 2011). Diversity jurisdiction

"requires an amount in controversy greater than $75,000 and complete diversity of citizenship of the litigants." *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007) (citing 28 U.S.C. § 1332(a)). "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *Id.* "An LLC's citizenship, for purposes of diversity jurisdiction, is the citizenship of each of its members." *Id.* And when an entity with a right to sue assigns that right to an assignee diverse from all defendants, a proper, non-collusive assignment will create diversity jurisdiction. *See* 28 U.S.C. § 1359; *Slater*, 650 F.3d at 1135.

For diversity purposes, E3, an LLC, is a citizen of Kansas and South Dakota; Biothane is a citizen of Delaware and Pennsylvania; and PEI is a citizen of Missouri. The amount in controversy is well over $75,000. Diversity jurisdiction is thus facially proper. *See* 28 U.S.C. § 1332(a). PEI, however, challenges our diversity jurisdiction in two ways.

PEI first argues that the citizenship of AltEn, the LLC that ended up owning the plant and the boiler, should be attributed to E3. PEI argues that AltEn and E3 are related because AltEn owns the property that is the subject of E3's claims and because E3, directly and indirectly, owns interests in AltEn. And PEI claims that AltEn, like PEI, is a citizen of Missouri. Thus, if AltEn's purported Missouri citizenship is attributable to E3, E3 and PEI are not diverse. But AltEn's citizenship is not attributable to E3 because E3's "citizenship is that of its members." *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004). And E3's sole member is a citizen of Kansas and of South Dakota, not of Missouri. What AltEn owns and what E3 owns do not matter here. What matters is the citizenship of E3's member.

As its second point, PEI claims that E3 was assigned the right to sue from a related entity that, like PEI, was a citizen of Missouri. Such an assignment arguably

suggests that E3 "improperly or collusively" invoked diversity jurisdiction. 28 U.S.C. § 1359; *see also, e.g.*, *McCulloch v. Velez*, 364 F.3d 1, 6 (1st Cir. 2004) ("Assignments between related parties . . . are subject to . . . exacting scrutiny."). This specific aspect of our review, whether diversity jurisdiction was wrongfully manufactured through assignment, is a question of fact, which we review for clear error. *Nat'l Fitness Holdings, Inc. v. Grand View Corporate Ctr., LLC*, 749 F.3d 1202, 1206 (10th Cir. 2014) (collecting cases). Here the assignment was ordered by the bankruptcy court at the request of an appointed bankruptcy trustee. PEI presents no evidence that this assignment was improper or collusive. Nor does PEI cite any case finding impropriety or collusion in similar circumstances. We thus hold that the district court did not clearly err on this basis.

## B.

Satisfied with our jurisdiction, we turn to the merits of the grant of summary judgment to Biothane and PEI. We review a grant of summary judgment *de novo* and view all genuinely disputed facts in favor of the non-moving party. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). "Summary judgment is proper 'if . . . there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56). In this diversity case, we are bound by the decisions of the Nebraska Supreme Court, and, where it has not spoken, we must predict how it would rule. *Lindsay Mfg. Co. v. Hartford Accident & Indem. Co.*, 118 F.3d 1263, 1267-68 (8th Cir. 1997). In Nebraska, "[w]hich statute of limitations applies is a question of law." *Churchill*, 830 N.W.2d at 55.

Before reviewing other statutes of limitations, we first conclude that the two-year statute of limitations for professional negligence, § 25-222, could apply.[2] This requires us to consider "whether [Biothane and PEI] were professionals who provided professional services to [E3] and whether the activity that caused [E3's] injuries was part of those professional services." *See Churchill*, 830 N.W.2d at 56.

The Nebraska Supreme Court has held repeatedly that engineers, including engineering companies, are professionals. *Reinke Mfg. Co., Inc. v. Hayes*, 590 N.W.2d 380, 388 (Neb. 1999); *Lindsay Mfg. Co. v. Universal Sur. Co.*, 519 N.W.2d 530, 538 (Neb. 1994); *Georgetowne*, 430 N.W.2d at 38. Biothane and PEI are engineering companies. Accordingly, they are professionals. E3's only response to this syllogism is to argue that Biothane and PEI are not professionals because their personnel working on the ethanol plant were not licensed in Nebraska. The Nebraska Supreme Court, however, has never held that a Nebraska professional license is a prerequisite to professional status. Admittedly, it has suggested so in dicta. *See Churchill*, 830 N.W.2d at 58 ("A license strongly indicates that a person is a professional, but that is not the only prerequisite."); *Tylle v. Zoucha*, 412 N.W.2d 438, 440 (Neb. 1987) ("[A] profession is far more than the mere possession of a license to ply one's trade."). But the issue in those cases was whether licensure was sufficient for professional status, not whether it was necessary. We do not detect a rule in these peripheral dicta—especially not a rule that often would contradict the repeated and commonsense holding that engineers are professionals.

We next conclude that Biothane and PEI "provided professional services." PEI, which actually attempted to integrate the boiler into the methane system, clearly

---

[2]In relevant part, § 25-222 states that "[a]ny action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action."

provided engineering, and thus professional, services. Biothane, however, arguably did not. As E3 asserts, Biothane may have acted as a non-professional general contractor and, lacking experience installing boilers, subcontracted the actual engineering to PEI. We think, however, that E3's own pleading shows that Biothane provided professional services. *See Knudsen v. United States*, 254 F.3d 747, 752 (8th Cir. 2001) ("[F]actual statements in a party's pleadings are generally binding on that party unless the pleading is amended."). Consistent with Biothane's expertise in systems integration, E3's complaint charged that Biothane, among other things, failed "to properly supervise and manage the work of" PEI. The Nebraska Supreme Court has held that an architectural firm's failure to supervise construction based on its plans is "clearly a professional act contemplated by § 25-222." *Williams v. Kingery Constr. Co.*, 404 N.W.2d 32, 32-34 (Neb. 1987) (per curiam). The failure of an engineering firm to supervise activities within its professional expertise should be so as well. And if more is necessary, E3 admitted that Biothane provided services under the terms of the Boiler Purchase Order, which required "the design engineering services necessary to integrate the boiler into the overall biogas management system." Accordingly, there is no genuine dispute as to whether Biothane and PEI provided professional services.

Finally, we decide "whether the activity that caused [E3's] injuries was part of those professional services." *See Churchill*, 830 N.W.2d at 56. E3 contends that in causing the explosion, Landers was merely lighting the boiler, not performing the engineering services of installation and integration. But whether Landers was lighting the boiler or installing it, he was still performing the professional services for which PEI was hired. In an analogous case, the Nebraska Supreme Court considered a patient's allegation that her doctor had hurt her by negligently adjusting his examination chair while she sat in it. *Olsen v. Richards*, 440 N.W.2d 463, 463-64 (Neb. 1989). The patient claimed that merely adjusting a headrest was "ordinary negligence," not professional negligence governed by § 25-222. *Id.* at 464. The court rejected that argument and explained that "when the alleged act of negligence

-7-

occurred, [the doctor] was positioning [the patient] for the purpose of rendering her a service in his role as her physician." *Id.* at 465. Here, E3 complained that the explosion occurred during "the initial installation and testing of the Boiler System." In other words, Landers was lighting the boiler for the purpose of rendering E3 a service in his role as an engineer. Here too then, Landers's starting the boiler was a professional act. Moreover, the record makes clear that at the time, lighting the boiler did require professional expertise. Airflow from the other boiler was interfering so much with the flame that Landers had to override automatic controls and manually operate the boiler he was trying to light.

Because Biothane and PEI were professionals that provided professional services to E3 and because Landers's activities that caused the explosion were part of those professional services, § 25-222's two-year limitation period could apply to this case.

## C.

That, however, is not the end of our inquiry. In Nebraska, "where different statutes of limitations are equally applicable, the one allowing the longer period governs." *Georgetowne*, 430 N.W.2d at 38-39. Accordingly, we must determine whether any other limitations period is "equally applicable" here. E3 proposes five alternatives: the five-year period for breach of contract, § 25-205, and the four-year periods for negligence, § 25-207; for builders and contractors making improvements to real property, § 25-223; for product liability, § 25-224; and for breach of contract for a sale of goods, Neb. Rev. Stat. U.C.C. § 2-725.

None of these limitations periods are equally applicable. "Under Nebraska law, the two-year statute of limitations applies *whenever* a professional is sued for an action performed in a professional capacity." *Stumpf v. Albracht*, 982 F.2d 275, 278 (8th Cir. 1992) (emphasis added). For example, in one Nebraska case, a plaintiff sued

an engineering company for negligence and breach of contract when the designs for which the plaintiff had contracted were allegedly defective. *Reinke*, 590 N.W.2d at 385. But even though the plaintiff had pleaded an action in contract, as the claims all "refer[red] to the performance of professional engineering services," the Nebraska Supreme Court held that § 25-222 and no other statute of limitations controlled, *id.* at 388:

> By alleging various theories of recovery, [the plaintiff] attempts to parse its claims in order to obtain the advantage of longer periods of limitation and avoid the statutory bar of § 25–222. If all of [the plaintiff's] claims are based on a single professional relationship, however, they may not be separated into various parts to allow different periods of limitation to be applied. . . . [W]e [have] explained that we do not believe that the Legislature in adopting the special statute of limitations for professional negligence, section 25–222, intended that the various aspects of the whole professional relationship should be separated. Therefore, if [the plaintiff's] claims are for professional malpractice, whether pled in tort or contract, the statute of limitations for professional negligence contained in § 25–222 applies.

*Id.* at 387-88 (citations omitted) (internal quotation marks omitted). This rule is longstanding.[3] As already discussed, E3's claims arise from alleged professional negligence. Accordingly, no other statute of limitations—none of E3's five alternatives—can be equally applicable.

_____

[3] *See Maloley v. Shearson Lehman Hutton, Inc.*, 523 N.W.2d 27, 28-29 (Neb. 1994) (claims of negligence and breach of fiduciary duty governed by § 25-222); *Olsen*, 440 N.W.2d at 464-65 (negligence claim governed by § 25-222 or non-professional malpractice statute); *Jones v. Malloy*, 412 N.W.2d 837, 841 (Neb. 1987) (battery claim governed by malpractice statute); *Colton v. Dewey*, 321 N.W.2d 913, 915, 917 (Neb. 1982) (fraud claimed governed by § 25-222); *Stacey v. Pantano*, 131 N.W.2d 163, 165 (Neb. 1964) (fraud claim governed by malpractice statute).

We mention in particular one of E3's suggested statutes of limitations, the four-year statute for breach of a contract for the sale of goods. E3 plausibly argues that the Boiler Purchase Order was a contract for goods, not a contract for services. *See Mennonite Deaconess Home & Hosp., Inc. v. Gates Eng'g Co., Inc.*, 363 N.W.2d 155, 160-61 (Neb. 1985) (explaining that the primary purpose of a transaction determines whether it is a sale of goods). That argument, however, is ultimately irrelevant. The essence of the allegation against Biothane is not that Biothane failed to sell a boiler, but rather that Biothane failed to provide properly the engineering services of start-up and integration, or the supervision of those services. Regardless of whether this failure ultimately led to the breach of a contract, for goods or otherwise, E3 still sued Biothane "for an action performed in a professional capacity." *Stumpf*, 982 F.2d at 278. Section 25-222 controls such suits.

We admit, however, that there is an arguable anomaly in Nebraska's case law. In *Murphy v. Spelts–Schultz Lumber Co. of Grand Island*, Spelts–Schultz designed, manufactured, and sold to Murphy custom roof trusses that eventually failed. 481 N.W.2d 422, 425 (Neb. 1992). When Murphy sued based on negligence and beach of warranty, Spelts–Schultz responded that Murphy's suit was barred by the applicable statute of limitations, but it did not specify which statute that was. *Id.* The district court agreed and granted summary judgment for Spelts–Schultz, but it too did not explain which statute of limitations controlled. *Id.* at 425. The Nebraska Supreme Court thus began "a process of elimination to determine whether any statute of limitation invalidat[ed] the . . . summary judgment." *Id.* at 426. The court concluded that "Murphy's action *might be* construed as one *somehow* based on negligence in architectural or engineering services." *Id.* at 427 (emphases added). The court explained that the professional malpractice statute, § 25-222, displaced the general statute of limitations for negligence. *Id.* at 427. The court, however, nonetheless went on to consider other statutes of limitations. *Id.* at 428-31. If the court concluded that § 25-222 did apply, then Murphy's claims arose from

professional services, and the court did not need to consider any other limitations periods. Why it did is unclear. What is clear, however, is that *Murphy* did not cite the well-established rule that plaintiffs may not parse claims to escape § 25-222. And we do not think that the Nebraska Supreme Court *sub silentio* abandoned a rule to which it has adhered at least twice since. *See Reinke*, 590 N.W.2d at 388; *Maloley*, 523 N.W.2d at 28-29; *see also Stumpf*, 982 F.2d at 278. Whatever one is to make of *Murphy*, the rule in Nebraska is that "the two-year statute of limitations applies whenever a professional is sued for an action performed in a professional capacity." *Stumpf*, 982 F.2d at 278. Accordingly, § 25-222 and only § 25-222 controls this case.

III.

E3 does not dispute that if § 25-222 controls, this suit is time-barred. The judgment of the district court is affirmed.

_____