RAY D. NUSS AND SANDRA FOX, SPECIAL ADMINISTRATORS FOR
AND ON BEHALF OF THE ESTATE OF CURTIS M. NUSS, DECEASED,
APPELLANTS AND CROSS-APPELLEES, V. ANNABELLE D.
ALEXANDER, PERSONAL REPRESENTATIVE OF THE
ESTATE OF EUGENE M. ALEXANDER, DECEASED,
APPELLEE AND CROSS-APPELLANT.
691 N.W.2d 94

Filed January 14, 2005.   No. S-03-1084.

Kent A. Schroeder and Vikki S. Stamm, of Ross, Schroeder & Romatzke, for appellants.

Jeffrey L. Stoehr, of Law Offices of Jeffrey L. Stoehr, P.C., L.L.O., for appellee.

Hendry, C.J., Wright, Connolly, Gerrard, Stephan, McCormack, and Miller-Lerman, JJ.

Connolly, J.

Ray D. Nuss and Sandra Fox, the special administrators and personal representatives for the estate of Curtis M. Nuss (appellants), appeal the district court's order dismissing part of their lawsuit against Eugene M. Alexander's estate as time barred. The remainder of the suit was tried, and the court found for the appellants. Annabelle D. Alexander, the personal representative of Eugene Alexander's estate (appellee), cross-appeals, arguing that the entire action was time barred. We conclude that the entire action was time barred and affirm in part, and in part reverse and remand with directions to dismiss.

## BACKGROUND

The appellants filed a fifth amended petition alleging that Nuss had employed Alexander for various legal services based on an oral contract. Nuss died on March 14, 1993, and the current action was initially filed on March 13, 1996.

The appellants alleged that from 1972 until the time of his death, Nuss paid Alexander $236,697.69 in attorney fees. The petition does not describe what legal services were provided, nor does it allege that Nuss was incompetent to make decisions or control his finances.

The appellants also allege that on June 19, 1992, Nuss entered into a contract with a real estate broker, which contract provided that Alexander was to receive 3½ percent of the gross selling price of $319,200—an $11,172 fee. The real estate agreement did not require Alexander to perform any work on the sale. It did, however, provide that he would receive a portion of the sale proceeds. The appellants allege that the fee was excessive.

The appellants alleged four theories of recovery. First, they alleged assumpsit, stating that Alexander retained money paid to him that exceeded reasonable compensation for services rendered and had not accounted for the services through time records, hourly rates, or a description of services performed. Second, the appellants alleged a breach of fiduciary duty, stating that Alexander had a duty to disclose the actual costs, time, and preparation required to provide services to Nuss. They further

alleged that Alexander was negligent in failing to disclose excessive charges to Nuss. Third, the appellants alleged that Alexander converted Nuss' property. Finally, they alleged a breach of implied covenant of good faith and fair dealing by charging an excessive fee. Each theory of recovery sought damages in the amount of $236,697.69.

The appellants also alleged that they filed their action "as soon as the acts and omissions alleged . . . were discovered," that the causes of action could not have been discovered within any applicable statute of limitations, that they could not discover Alexander's acts and omissions until they were appointed as personal representatives, that Alexander concealed facts from Nuss that prevented him from discovering the facts, and that Nuss could not reasonably discover the facts within any applicable statute of limitations.

### OPPORTUNITY TO DISCOVER FACTS

After Nuss' death, Alexander met with the appellants to discuss the probate proceeding. The record shows the appellants were suspicious of Alexander and questioned the fees he proposed to charge for the probate proceedings. Alexander did not provide documents or disclose information to the appellants, stating that he would do so when he was named personal representative of the estate.

On March 22, 1993, Alexander filed formal probate proceedings and requested that he be appointed personal representative, which was denied. On April 12, the appellants filed objections based in part on the allegation that Nuss had paid excessive fees. In December, depositions were taken and the appellants were provided with information about the real estate contract and Alexander's customary fees. The appellants, however, testified that they had difficulty getting information about the relationship between Nuss and Alexander because they were not yet appointed special administrators or personal representatives of the estate. But the record also shows that by December 21, they had information about the real estate sale and financial transactions between Alexander and Nuss. At trial, appellant Ray Nuss admitted that he did not pursue being named special administrator earlier because the appellants did not believe there was a

need for it. At the December depositions, information about the contract and the fees was disclosed.

## RULING ON DEMURRER

The appellee filed a demurrer alleging that the petition failed to state a cause of action and was time barred on its face. On ruling on the demurrer, the court considered the $11,172 fee under the real estate contract separately from the remaining fees. Regarding the fees not pertaining to the real estate contract, the court found that the petition failed to state a cause of action. The court also found that there was no factual allegation that Nuss could not have discovered the issues during his lifetime and determined that all theories of recovery were time barred except the $11,172 fee for the real estate contract. Thus, the court sustained the demurrer with the exception that it allowed the case to proceed on the real estate agreement fee. The court refused to allow the appellants to amend their petition because it had been amended on multiple occasions restating the same issues.

The action on the real estate fee was tried to the district court, which determined that the 2-year professional malpractice statute of limitations was tolled when Alexander sought appointment as personal representative. The court then found the real estate fee to be excessive and entered judgment for $10,672. Nuss appeals, and Alexander cross-appeals.

## ASSIGNMENTS OF ERROR

The appellants assign, rephrased, that the district court erred by sustaining the demurrer without leave to amend and finding that (1) the statute of limitations had run, (2) the statute of limitations had not been tolled, (3) the petition failed to state a cause of action, and (4) they could not amend to state a cause of action.

On cross-appeal, the appellee assigns, rephrased, that the court erred when it (1) failed to find that the entire action was time barred, (2) determined that the statute of limitations had been tolled, and (3) determined that the real estate fee was excessive without hearing expert testimony or considering Alexander as a third-party beneficiary to the real estate contract.

## STANDARD OF REVIEW

Which statute of limitations applies is a question of law that an appellate court must decide independently of the conclusion

reached by the trial court. *Parks v. Merill, Lynch*, 268 Neb. 499, 684 N.W.2d 543 (2004).

■ A petition which makes apparent on its face that the cause of action it asserts is ostensibly barred by the statute of limitations fails to state a cause of action and is demurrable unless the petition alleges some excuse which tolls the operation and bar of the statute. *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d 522 (2002).

■ Before error can be predicated upon the refusal of a trial court to permit an amendment to a petition after a demurrer is sustained, the record must show that, under the circumstances, the ruling of the court was an abuse of discretion. *Butler Cty. Sch. Dist. No. 502 v. Meysenburg*, 268 Neb. 347, 683 N.W.2d 367 (2004).

## ANALYSIS

The appellants argue that the district court erred when it determined that the petition failed to state a cause of action. They argue that the statute of limitations had not run or had been tolled. The appellee argues that the limitation period ran on all claims, and she cross-appeals concerning the claim of excessive fees under the real estate agreement. We determine that all claims were barred by the statute of limitations.

### APPROPRIATE STATUTE OF LIMITATIONS

We first address which statute of limitations applies. Although the petition attempted to assert causes of action under several theories, the underlying claim in all cases was for excess attorney fees. Neb. Rev. Stat. § 25-222 (Reissue 1995) provides:

> Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action; *Provided*, if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; *and provided further*, that in no event may any action

be commenced to recover damages for professional negligence or breach of warranty in rendering or failure to render professional services more than ten years after the date of rendering or failure to render such professional service which provides the basis for the cause of action.

Professional misconduct or any unreasonable lack of skill or fidelity in the performance of professional or fiduciary duties is malpractice and comes within the professional or malpractice statute of limitations. *Schendt v. Dewey*, 246 Neb. 573, 520 N.W.2d 541 (1994); *Colton v. Dewey*, 212 Neb. 126, 321 N.W.2d 913 (1982). Thus, we have stated in a professional negligence action that a plaintiff cannot separate a cause of action which arises primarily out of the professional's alleged negligence and label it something else in hopes of creating a different theory of recovery in order to receive the benefit of a longer statute of limitations. Merely because a cause of action is couched in terms of a cause of action other than negligence does not make it so. *Gravel v. Schmidt*, 247 Neb. 404, 527 N.W.2d 199 (1995).

Here, the causes of action or theories of recovery are premised on excessive fees. The petition concerns professional misconduct, and thus, the 2-year limitations period under § 25-222 applies.

### When § 25-222 Began to Run and Whether It Was Tolled

The appellants contend that the statute of limitations did not begin to run until the county court denied Alexander's appointment as personal representative of the estate, and the appeal was dismissed. They argue that they could not discover Alexander's wrongful acts until that time.

A limitations period begins to run upon the violation of a legal right, that is, when the aggrieved party has the right to institute and maintain suit. *Sodoro, Daly v. Kramer*, 267 Neb. 970, 679 N.W.2d 213 (2004). For a limitations period to begin to run, it is not necessary that a plaintiff have knowledge of the exact nature or source of a problem, but only that a problem exists. *Reinke Mfg. Co. v. Hayes*, 256 Neb. 442, 590 N.W.2d 380 (1999). A plaintiff seeking to invoke the "discovery" clause to toll the statute of limitations must allege facts showing why the cause of action reasonably could not have been discovered

during the limitations period. *Giese v. Stice*, 252 Neb. 913, 567 N.W.2d 156 (1997).

Here, the record shows that the limitations period had run on all allegations in the petition. The latest allegation focused on excessive fees or wrongdoing concerning the real estate agreement of June 19, 1992. But the action was not filed until March 13, 1996, well outside the 2-year statute of limitations. We disagree that the appellants could not have discovered the alleged cause of action within the 2-year period. Although the appellants contend that they lacked some specifics about the relationship between Nuss and Alexander, the record is clear that they had concerns about excessive fees by April 1993, when they objected to Alexander's appointment as personal representative. Further, by December 21, 1993, the appellants had deposed Alexander and had all necessary information about Alexander's alleged wrongdoing. Thus, the limitation period was in effect and not tolled. Accordingly, the petition was filed out of time.

The district court held, however, that the limitations period was tolled by Neb. Rev. Stat. § 25-214 (Reissue 1995), because Alexander's actions in attempting to be named personal representative concealed the facts and prevented the appellants from acting. We disagree.

Section 25-214, entitled "Actions against absconding or absent debtor," states:

> If, when a cause of action accrues against a person, he is out of the state, or shall have absconded or concealed himself, the period limited for the commencement of the action shall not begin to run until he comes into the state, or while he is absconded or concealed; and if, after the cause of action accrues, he departs from the state, or absconds or conceals himself, the time of his absence or concealment shall not be computed as any part of the period within which the action must be brought.

Assuming without deciding that § 25-214 applies to a professional malpractice action, we determine that it does not apply to the facts alleged in the petition. It was not alleged that Alexander was absent from the state or concealed himself. The appellants argue, however, that Alexander concealed facts by attempting to be named personal representative, thus preventing them from

taking any action. But any concealment of the facts was discovered before the 2-year limitations period ran and did not prevent the appellants from filing suit. Although from December 1993, the appellants were aware of any excessive fees, they did not seek to be appointed special administrators. A special administrator has the power of a personal representative except as limited in the appointment and duties as prescribed in the order—including the ability to file a lawsuit. Neb. Rev. Stat. § 30-2460 (Reissue 1995). Although the appellants could have moved to be appointed as special administrators, they admit that they did not believe there was a need to do so before May 1995, which was after the statute of limitations had run. Thus, § 25-214 does not act to toll the statute of limitations.

### AMENDMENT OF PLEADINGS

The appellants contend that they should be allowed to amend their pleadings to plead the inability to discover the facts underlying their allegations. The district court noted that the petition had been amended five times without pleading such facts. The record makes clear that the facts were known and that suit could have been filed before the statute of limitations ran. Accordingly, the court did not abuse its discretion when it denied leave to amend.

### CONCLUSION

We conclude that the court did not err when it sustained the demurrer and dismissed part of the petition with prejudice because the petition was barred by the statute of limitations. On cross-appeal, we conclude that the district court erred when it failed to dismiss the remainder of the petition, because the petition was also barred by the statute of limitations. Accordingly, we affirm on appeal, and reverse, and remand with directions to dismiss on cross-appeal.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED WITH DIRECTIONS TO DISMISS.