N.W.2d 34 (1996). The district court did not abuse its discretion in denying Murante's motion to amend.

The district court correctly determined that Murante was liable to Mutual under the guaranty agreement for the amount of Sutherlands' indebtedness minus the credit bid from the trustee's sale. There are no material issues of fact, and Mutual is entitled to judgment as a matter of law. Accordingly, the district court did not err in sustaining Mutual's motion for summary judgment. See *Zawaideh v. Nebraska Dept. of Health & Human Servs., ante* p. 48, 825 N.W.2d 204 (2013).

## CONCLUSION

Murante's guaranty was not subject to the Act, and under the terms of the guaranty, Murante is liable for the total amount of Sutherlands' debt, less the trustee's sale price. The district court did not abuse its discretion in denying Murante's motion for leave to amend the complaint, and it did not err in sustaining Mutual's motion for summary judgment. We affirm the decision of the district court.

AFFIRMED.

STEPHAN, MILLER-LERMAN, and CASSEL, JJ., not participating.

---

JEANETTE CHURCHILL, APPELLANT, V. COLUMBUS
COMMUNITY HOSPITAL, INC., A NEBRASKA
CORPORATION, ET AL., APPELLEES.

___ N.W.2d ___

Filed April 25, 2013.    No. S-12-452.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Limitations of Actions.** Which statute of limitations applies is a question of law.

  4. **Judgments: Appeal and Error.** An appellate court reaches a conclusion regarding questions of law independently of the trial court's conclusion.
  5. **Limitations of Actions: Negligence.** In determining whether the statute of limitations for professional negligence applies to a plaintiff's claim, the court must determine whether the defendant is a professional and was acting in a professional capacity in rendering the services upon which the claim is based.
  6. **Limitations of Actions: Damages.** Actions for damages arising out of the professional services provided by physical therapists are actions based on an alleged claim of negligence in providing professional services and are subject to the time limitations described in Neb. Rev. Stat. § 25-222 (Reissue 2008).
  7. **Limitations of Actions: Negligence.** A cause of action accrues for negligence in professional services when the alleged act or omission in rendering or failure to render professional services takes place.
  8. **Words and Phrases.** In determining whether a particular act or service is professional in nature, the court must look to the nature of the act or service itself and the circumstances under which it was performed.

Appeal from the District Court for Platte County: Robert R. Steinke, Judge. Affirmed.

Jon J. Puk, Kelli Anne Francis, and Lawrence J.G. Roland, Senior Certified Law Student, of Walentine, O'Toole, McQuillan & Gordon, L.L.P., for appellant.

Mark E. Novotny, John M. Walker, and Sarah F. Macdissi, of Lamson, Dugan & Murray, L.L.P., for appellees.

Wright, Connolly, Stephan, McCormack, and Cassel, JJ.

Wright, J.

## NATURE OF CASE

In November 2007, Jeanette Churchill attended an aquatic physical therapy session at Premier Physical Therapy, an off-site clinic owned by Columbus Community Hospital, Inc. As she was descending the steps of the clinic's aboveground pool, she slipped and fell on the wet tile floor, injuring her right arm and wrist. On November 1, 2011, Churchill filed an action against Columbus Community Hospital, Inc.; Columbus Community Hospital, doing business as Premier Physical Therapy; and Premier Physical Therapy of Columbus Community Hospital (collectively the defendants). The district court granted summary judgment in favor of the defendants

because it concluded the action was subject to a 2-year statute of limitations. Churchill appeals.

## SCOPE OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Professional Mgmt. Midwest v. Lund Co.*, 284 Neb. 777, 826 N.W.2d 225 (2012). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

[3,4] Which statute of limitations applies is a question of law. *Fitzgerald v. Community Redevelopment Corp.*, 283 Neb. 428, 811 N.W.2d 178 (2012). We reach a conclusion regarding questions of law independently of the trial court's conclusion. *Id.*

## FACTS

Columbus Community Hospital owned Premier Physical Therapy, an offsite clinic in Columbus, Nebraska. Churchill, who suffered from chronic low-back pain, participated in aquatic physical therapy which had been prescribed by her physician.

Generally, clinic patients were not assisted in leaving the clinic's exercise pool area unless they had a problem walking. Jay Pelan was a physical therapist who provided therapy to Churchill. During his patients' initial session, he told them to be careful when going up and down the exercise pool steps and to be careful when leaving the pool area. During Churchill's first physical therapy session, Pelan evaluated her ability to walk and to go up and down steps, and he determined she did not have trouble walking.

This action arose from an aquatic physical therapy session held on November 2, 2007. Pelan led Churchill in aquatic physical therapy exercises with the help of Amy Nelson.

Nelson was studying to be a physical therapy assistant and was working as a physical therapy technician. Pelan directed the session from outside the pool. He briefly stepped out of the exercise room to check on another patient, and Nelson monitored the session. Pelan returned, and at the end of the session, he told Churchill to leave the pool and go to the locker room to change. Churchill followed his direction.

The pool was above ground, which required Churchill to navigate steps down from the pool to a tile floor in order to reach the locker room. Churchill was not assisted in walking down the steps because her evaluation did not indicate she had a problem walking. On the tile floor was a large puddle of water. As Churchill exited the pool, descended the steps, and stepped from the last step onto the puddle, she slipped and fell. She broke her right elbow and fractured her right forearm and wrist.

On November 1, 2011, Churchill filed an action in Platte County District Court, claiming the defendants had been negligent in several respects, including failure to repair or clean the floor and failure to warn. Her action was based upon a theory of premises liability that would be subject to the general 4-year statute of limitations provided in Neb. Rev. Stat. § 25-207 (Reissue 2008).

The defendants moved for summary judgment, claiming the action was barred by the statute of limitations. The district court determined that the sole issue presented was whether the 2-year statute of limitations for professional malpractice applied. There was no dispute that the lawsuit had been filed outside this 2-year statute of limitations.

The district court considered *Swassing v. Baum*, 195 Neb. 651, 240 N.W.2d 24 (1976), and *Olsen v. Richards*, 232 Neb. 298, 440 N.W.2d 463 (1989), and concluded that a professional relationship existed between Churchill and the defendants. That professional relationship led to the physical therapy session, and getting out of the pool was "an essential and integral part" of the professional services given to Churchill. The court concluded that a 2-year statute of limitations applied, citing Neb. Rev. Stat. §§ 25-208 and 25-222 (Reissue 2008). Accordingly, it determined the action was time barred, sustained the motion

for summary judgment, and dismissed Churchill's complaint with prejudice.

Churchill appealed, and this court moved the case to its docket on its own motion pursuant to its authority to regulate the dockets of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

## ASSIGNMENTS OF ERROR

Churchill assigns, restated, that the district court erred in (1) concluding that a professional relationship existed between her and the defendants; (2) concluding that the activity that was the subject of the claim of negligence was part of the professional services provided by the defendants; (3) failing to consider negligence based on premises liability; and (4) dismissing the complaint with prejudice, which denied her the opportunity to amend her complaint.

## ANALYSIS

[5] In determining whether the statute of limitations for professional negligence applies to a plaintiff's claim, the court must determine whether the defendant is a professional and was acting in a professional capacity in rendering the services upon which the claim is based. See, *Parks v. Merrill, Lynch*, 268 Neb. 499, 684 N.W.2d 543 (2004); *Reinke Mfg. Co. v. Hayes*, 256 Neb. 442, 590 N.W.2d 380 (1999). This requires answering two questions: whether the defendants were professionals who provided professional services to Churchill and whether the activity that caused Churchill's injuries was part of those professional services.

The district court sustained the motion for summary judgment based on its conclusion that the 2-year statute of limitations set forth in § 25-208 or § 25-222 applied to this case. Which statute of limitations applies is a question of law. We reach a conclusion regarding questions of law independently of the trial court's conclusion. *Fitzgerald v. Community Redevelopment Corp.*, 283 Neb. 428, 811 N.W.2d 178 (2012).

### Physical Therapy Is Profession

Churchill claims that her action is for premises liability and that this court has not determined that physical therapy is a

profession. The Legislature has not specifically stated which occupations provide professional services as the term is set forth in § 25-222. See *Parks, supra*. Section 25-222 provides in relevant part:

> Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action[.]

We have previously determined that an accountant, a medical technician, and an investment advisor were professionals for purposes of the statute of limitations described in § 25-222, see *Witherspoon v. Sides Constr. Co.*, 219 Neb. 117, 362 N.W.2d 35 (1985), but have not addressed whether a physical therapist is a professional. If a physical therapist is not a professional, § 25-222 does not apply to this action.

In *Swassing v. Baum*, 195 Neb. 651, 240 N.W.2d 24 (1976), the issue was whether an employee was performing professional services at the time of the alleged negligent conduct. A blood-typing test incorrectly reported the plaintiff's blood type. The test was ordered by a physician but performed by his employee. The plaintiff claimed that had the blood test been accurate, permanent injuries to one of her children could have been avoided. Any direct suit against the physician was time barred by § 25-222, but the plaintiff claimed that the physician's employee was negligent in conducting the test and that the claim against the employee was subject to a 4-year statute of limitations. If the employee could be sued for negligence in conducting the blood test, the plaintiff would claim the physician was liable under respondeat superior.

As a matter of law, this court concluded that the blood test was a professional service "because the performance of the blood test was an essential and integral part of the rendition of professional services by [the physician] to [the plaintiff]." *Swassing*, 195 Neb. at 655, 240 N.W.2d at 27. We defined a "'"professional" act or service'" as

> "one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual. . . . In determining whether a particular act is of a professional nature or a 'professional service' we must look not to the title or character of the party performing the act, but to the act itself."

*Id*. at 656, 240 N.W.2d at 27 (emphasis omitted) (quoting *Marx v. Hartford Acc. & Ind. Co.*, 183 Neb. 12, 157 N.W.2d 870 (1968)).

We held that the employee was performing professional services and that any negligence by the employee was professional negligence subject to the time limitation for commencing an action for professional negligence under § 25-222. Accordingly, we affirmed the district court's dismissal.

Churchill concedes that if the *Swassing* definition of a "professional" applies, her action would be controlled by § 25-222. She claims, however, that the term "professional" was redefined in *Tylle v. Zoucha*, 226 Neb. 476, 412 N.W.2d 438 (1987), and that summary judgment was inappropriate without a determination that physical therapists are professionals under *Tylle*.

Whether physical therapists are professionals is a question of law that we decide independently of the trial court. See, *Parks v. Merrill, Lynch*, 268 Neb. 499, 684 N.W.2d 543 (2004); *Reinke Mfg. Co. v. Hayes*, 256 Neb. 442, 590 N.W.2d 380 (1999). In *Tylle, supra*, this court determined that the best definition of the word "profession" was found in Webster's Third New International Dictionary, Unabridged, which defined a "profession" as

> "a calling requiring specialized knowledge and often long and intensive preparation including instruction in skills and methods as well as in the scientific, historical, or scholarly principles underlying such skills and methods, maintaining by force of organization or concerted opinion high standards of achievement and conduct, and committing its members to continued study and to a kind of work

which has for its prime purpose the rendering of a public
service . . . ."

*Tylle*, 226 Neb. at 480, 412 N.W.2d at 440. This definition
stressed "the long and intensive program of preparation to
practice one's chosen occupation traditionally associated only
with professions." *Id*. at 480, 412 N.W.2d at 441.

In *Jorgensen v. State Nat. Bank & Trust*, 255 Neb. 241, 583
N.W.2d 331 (1998), the court recognized that an occupation
was not a profession merely because it required mental rather
than physical labor. We stated that a college degree embodies
the "'long and intensive program of preparation'" of a pro-
fession and that "licensing, although not dispositive, strongly
indicates that an occupation is a profession." *Id*. at 246, 583
N.W.2d at 335.

The Nebraska Court of Appeals applied *Jorgensen, supra*, to
conclude that abstracters were professionals in *Cooper v. Paap*,
10 Neb. App. 243, 634 N.W.2d 266 (2001). The Abstracters
Act, see Neb. Rev. Stat. § 76-535 et seq. (Reissue 2009), is
meant to protect citizens and ensure that abstracters who are
serving the public meet certain standards. The Abstracters Act
establishes a board of examiners to enforce the provisions of
the act. Abstracters have to be licensed; and to obtain a license,
abstracters have to pass a written examination and prove they
have a year of verified land title-related experience. Once
licensed, an abstracter has to complete and certify successful
completion of 3 hours of board-approved professional develop-
ment credits. The term "professional development credits" has
been substituted for "continuing education programs" in the
statutory language. See, § 76-544; 1985 Neb. Laws, L.B. 47.
The board of examiners has the authority to revoke or suspend
an abstracter's license.

Several factors are indicative of a profession. A license
strongly indicates a person is a professional, but that is not the
only prerequisite. See *Jorgensen*, *supra*. The preparation and
training required to procure that license are also important fac-
tors. See, *Parks v. Merrill, Lynch*, 268 Neb. 499, 684 N.W.2d
543 (2004); *Jorgensen, supra*. A college degree indicates such
preparation and training, see *id*., but a college degree itself

is not required, see *Cooper, supra*. Work performed to render a professional service, continuing education requirements, and a professional disciplinary authority all indicate a person is a professional. See, *Parks, supra*; *Joregensen, supra*; *Cooper, supra*.

The Physical Therapy Practice Act, Neb. Rev. Stat. § 38-2901 et seq. (Reissue 2008), requires physical therapists to be licensed. Obtaining a license requires completing an approved educational program and an examination. See § 38-2921. An educational program may be approved based on the program's accreditation by the Commission on Accreditation in Physical Therapy Education or equivalent standards established by the Board of Physical Therapy. §§ 38-2926 and 38-2905. These requirements indicate that physical therapists complete the "'long and intensive program of preparation'" that is required of professionals. See *Jorgensen*, 255 Neb. at 246, 583 N.W.2d at 335.

Pursuant to § 38-2914, physical therapy includes "[e]xamining, evaluating, and testing individuals with . . . functional limitations . . . or other conditions related to health and movement and, through analysis of the evaluative process, developing a plan of therapeutic intervention and prognosis . . . ." Physical therapists must complete 20 hours of continuing education every 2 years. See, 172 Neb. Admin. Code, ch. 137, § 022.01A (2005) (currently found at 172 Neb. Admin. Code, ch. 137, § 013.01 (2012)). They are subject to disciplinary actions for ethical violations and failure to follow professional practice and can receive various sanctions, including suspension and license revocation. See, 172 Neb. Admin. Code, ch. 137, § 019.03 (2005) (currently found at 172 Neb. Admin. Code, ch. 137, §§ 015.01, 015.02, and 015.05 (2012)). Thus, physical therapists render a public service and are subject to both mandatory continuing education requirements and professional discipline.

[6] Based on the nature of the work, the educational and occupational requirements, and the factors discussed, we conclude that physical therapists are professionals. Accordingly, actions for damages arising out of the professional services

provided by physical therapists are actions based on an alleged claim of negligence in providing professional services and are subject to the time limitations described in § 25-222.

Scope of Professional Relationship

[7] We next examine whether the alleged act or omission upon which Churchill bases her claim was a part of the professional services provided to her by the defendants. A cause of action accrues for negligence in professional services when the alleged act or omission in rendering or failure to render professional services takes place. *Murphy v. Spelts-Schultz Lumber Co.*, 240 Neb. 275, 481 N.W.2d 422 (1992). In the case at bar, Churchill's cause of action accrued when she slipped while descending from the last step of the aboveground pool. If directing Churchill to get out of the pool without assistance was part of the professional services that were being provided to her at the time she slipped and fell, then the action is a claim based on professional negligence.

[8] In determining whether a particular act or service is professional in nature, the court must look to the nature of the act or service itself and the circumstances under which it was performed. *Parks v. Merrill, Lynch*, 268 Neb. 499, 684 N.W.2d 543 (2004). The defendants allege that leaving the pool area was an essential and integral part of providing professional services to Churchill.

In *Swassing v. Baum*, 195 Neb. 651, 240 N.W.2d 24 (1976), we determined that whether an action was a professional service was a question of law. A blood-typing test was essential and integral to the plaintiff's medical treatment, and we held the test was a professional service. In the case at bar, whether climbing out of the pool was essential and integral to Churchill's treatment is a question of law. We independently review questions of law decided by a lower court. See *Molczyk v. Molczyk, ante* p. 96, 825 N.W.2d 435 (2013).

In *Olsen v. Richards*, 232 Neb. 298, 440 N.W.2d 463 (1989), the plaintiff went to the doctor for an examination and sinus treatment. She was seated in a large antique examination chair and was injured when the doctor slammed the chair's headrest into her neck. We determined that the examination was an

integral part of the professional services given to the plaintiff and that the negligent act occurred while she was being positioned for the purpose of providing those services. We concluded that the Legislature did not intend to apply different statutes of limitations to different portions of the physician-patient relationship.

In *Stanley v. Lebetkin*, 123 A.D.2d 854, 507 N.Y.S.2d 468 (1986), the plaintiff fractured an ankle while getting off a doctor's examining table. There was no claim that the condition of the table or premises caused the injury. The basis for the plaintiff's negligence claim was the physician's duty to watch her on the table and help her on or off the table. That duty arose from the information gained through the physician-patient relationship and the doctor's knowledge as a physician. The complaint claimed the breach of a duty that arose from the physician-patient relationship and was substantially related to the treatment. The court concluded the action was a medical malpractice action barred by the statute of limitations because the plaintiff did not bring her claim within the time required for medical malpractice actions.

Churchill argues that the act of observing her climb out of the pool was not an essential and integral part of the physical therapy services she received and that her claim does not implicate the duty owed by a physician to a patient. She asserts that the action is one based upon premises liability and that *Olsen, supra*, and *Stanley, supra*, are "problematic," because those cases did not address premises liability. See brief for appellant at 14.

We disagree. In both of those cases, the patient was under the care of a physician when the injury occurred. In *Olsen, supra*, the patient was in an examination chair and the procedure was a part of the care and treatment being given by the physician. In *Stanley, supra*, the patient remained under the care of a medical professional while she was getting off an examination table.

Performing aquatic exercises in the aboveground pool was part of Churchill's physical therapy. Her physical therapist evaluated her ability to get into and out of the pool. When the physical therapist directed Churchill to get out of the

pool without assistance, he was providing professional services. Thus, at the time of her injuries, Churchill was receiving professional services from her physical therapist and her action to recover damages was based on alleged professional negligence.

Other jurisdictions have reached similar results. In *Rome v. Flower Mem. Hosp.*, 70 Ohio St. 3d 14, 635 N.E.2d 1239 (1994), the court addressed two consolidated cases. In one case, the plaintiff fell off an x-ray table when the table was lifted and alleged negligence in failing to properly secure the footboard. The court concluded that the claim for injury was a medical claim subject to a 1-year statute of limitations. The plaintiff in the second case alleged he was injured after a component of his wheelchair collapsed as he was being transported from the physical therapy department. Transport from physical therapy was inherently necessary to the physical therapy treatment. The claim was a medical claim barred by a 1-year statute of limitations.

In *Long v. Warren Gen. Hosp.*, 121 Ohio App. 3d 489, 700 N.E.2d 364 (1997), the plaintiff went to the hospital for a colonoscopy. He was told to change into a hospital gown but was advised to keep his socks on because it was cold. Later, an orderly came in and placed a gurney 5 feet from the bed where the plaintiff was sitting. The orderly told the plaintiff to walk to the gurney but offered no assistance. When the plaintiff was about halfway to the gurney, the orderly told him to bring the pillow from the bed. While turning to get the pillow, the patient fell and was injured. The court determined the plaintiff raised a medical claim subject to a 1-year statute of limitations.

In *Harris Methodist Fort Worth v. Ollie*, 342 S.W.3d 525 (Tex. 2011), the plaintiff alleged she was injured when she slipped on a wet floor while getting out of a bathtub. She claimed the hospital had a duty to properly maintain a safe environment and that the hospital breached its duty by failing to properly maintain the floor and warn her of the dangerous condition. The plaintiff's pleadings showed the claim was a safety claim directly related to services meeting fundamental needs. Hospitals necessarily provided patients services to meet

fundamental needs such as cleanliness and safety. The essence of the claim was a failure by the hospital to provide a dry floor, to warn of the hazards of a wet floor, or something similar. The court concluded the claim was a health care liability claim directly related to health care.

Churchill was receiving professional services at Premier Physical Therapy when the accident occurred. She was required to enter and leave the pool, and she was injured as she was leaving the pool at the direction of her physical therapist. Churchill's injuries arose while she was receiving professional services.

Since her claims arose from her professional relationship with her physical therapist, they are subject to the statute of limitations set forth in § 25-222. Because Churchill did not file her action within 2 years of the date of her injuries, the action is time barred.

### Remaining Arguments

We find no merit to any of Churchill's remaining assignments of error, and we affirm the judgment of the district court.

## CONCLUSION

Physical therapists are professionals. Because Churchill's claims arose from her professional relationship with her physical therapist, they are subject to the 2-year statute of limitations set forth in § 25-222. We affirm the district court's order of summary judgment in favor of the defendants.

Affirmed.

Heavican, C.J., and Miller-Lerman, J., participating on briefs.

Connolly, J., concurring.

Although I agree that this is a professional negligence case that is barred by Neb. Rev. Stat. § 25-222 (2008), I write separately because I disagree with the majority opinion's reasoning. As I read the opinion, § 25-222 applies to Churchill's claim merely because she was injured while receiving professional services. This is an insufficient basis for determining that Churchill has alleged professional negligence. I believe the opinion incorrectly omits the requirements of breach and causation from its analysis.

Under § 25-222,

> [a]ny action to recover damages based on *alleged*
> *professional negligence or upon alleged breach of war-*
> *ranty* in rendering or failure to render professional serv-
> ices shall be commenced within two years next after
> the alleged act or omission in rendering or failure to
> render professional services providing the basis for
> such action[.]

(Emphasis supplied.)

Negligence, by definition, is the defendant's breach of a
duty to exercise the applicable standard of care that proxi-
mately causes the plaintiff's damages.[1] Professional negligence
is the failure of a person rendering professional services to
exercise the standard of care that other members of the profes-
sion would ordinarily use, which failure proximately causes the
plaintiff's damages.[2]

Under § 25-222, we have held that a claim of any unreason-
able lack of skill or fidelity in the performance of professional
or fiduciary duties sounds in professional negligence.[3] The
relevant test is not the degree of skill required, but whether the
defendant's negligence was an integral part of the professional
services that the defendant was providing to the plaintiff.[4] And
under our case law, the statute of limitations under § 25-222
applies even to a claim that the defendant's employee was
negligent in performing an integral part of the professional
services that caused the plaintiff's damages.[5]

I agree that the physical therapist was a professional who
was rendering professional services at the time that Churchill
was injured. But I disagree that the next inquiry is "whether
the activity that caused the injury was part of those profes-
sional services."

---

[1] See, *Blaser v. County of Madison, ante* p. 290, 826 N.W.2d 554 (2013);
*Giese v. Stice*, 252 Neb. 913, 567 N.W.2d 156 (1997).

[2] See, *Green v. Box Butte General Hosp.*, 284 Neb. 243, 818 N.W.2d 589
(2012); *Wolski v. Wandel*, 275 Neb. 266, 746 N.W.2d 143 (2008).

[3] See *Nuss v. Alexander*, 269 Neb. 101, 691 N.W.2d 94 (2005).

[4] See *Olsen v. Richards*, 232 Neb. 298, 440 N.W.2d 463 (1989).

[5] See *Swassing v. Baum*, 195 Neb. 651, 240 N.W.2d 24 (1976).

Obviously, not every injury that occurs during the course of receiving professional services will be caused by professional negligence.[6] Churchill clearly could have been injured by an unsafe condition of the premises that was unrelated to the breach of a professional duty. And without a causal link between the defendants' breach of a professional duty and the plaintiff's damages, there is no professional negligence claim.

So in my view, the relevant question is whether her claim depended on a finding that the therapist's unreasonable lack of skill or fidelity in the performance of professional or fiduciary duties caused her injuries. If so, the court properly applied § 25-222 to her claim regardless of her theory of recovery.[7]

I conclude that this condition is satisfied. Churchill specifically alleged that the therapist was negligent in failing to assist her in descending the stairs from the pool onto a wet surface. Although she did not allege that the therapist was negligent in determining that she did not need assistance, her negligent assistance allegation shows that her claim depended upon a finding the therapist breached a professional duty, which breach caused her injuries. The therapist could not have been negligent in failing to assist her on wet steps unless he had improperly assessed her need for assistance or other precautions to avoid harming herself on wet surfaces while entering or exiting the pool.

Similarly, although she claims that the defendants were negligent in failing to repair or clean a condition of the flooring that presented an unreasonable risk of harm, water on the steps and flooring was not a condition that needed repairing. It was an inherent part of receiving physical therapy in a pool with other patients entering and exiting on the steps. The steps and the inherently wet conditions of the therapy created the need to assess each patient's physical abilities. So Churchill's claim could not have succeeded without a fact finder determining that the defendants should have known she would need

[6] *R.W. v. Schrein*, 263 Neb. 708, 642 N.W.2d 505 (2002), *modified on other grounds* 264 Neb. 818, 652 N.W.2d 574.

[7] See *Nuss, supra* note 3.

assistance or other precautions. Summed up, this is a claim that the therapist negligently assessed her abilities and needs. For this reason, I concur in the judgment that this a professional negligence claim.

———————————————

In re Interest of Rylee S., a child
under 18 years of age.
State of Nebraska, appellee, v.
Lisa S., appellant.
___ N.W.2d ___

Filed April 25, 2013.    No. S-12-531.

1.  **Juvenile Courts: Parental Rights.** A juvenile court has the discretionary power to prescribe a reasonable program for parental rehabilitation to correct the conditions underlying the adjudication that a child is a juvenile within the Nebraska Juvenile Code.
2.  ____: ____. While there is no requirement that the juvenile court must institute a plan for rehabilitation of a parent, the rehabilitation plan must be conducted under the direction of the juvenile court and must be reasonably related to the plan's objective of reuniting parent with child.
3.  **Juvenile Courts: Appeal and Error.** In analyzing the reasonableness of a plan ordered by a juvenile court, the Nebraska Supreme Court has noted that the following question should be addressed: Does a provision in the plan tend to correct, eliminate, or ameliorate the situation or condition on which the adjudication has been obtained under the Nebraska Juvenile Code? An affirmative answer to this question provides the materiality necessary in a rehabilitative plan for a parent involved in proceedings within a juvenile court's jurisdiction. Otherwise, a court-ordered plan, ostensibly rehabilitative of the conditions leading to an adjudication under the Nebraska Juvenile Code, is nothing more than a plan for the sake of a plan, devoid of corrective and remedial measures.
4.  **Juvenile Courts: Parent and Child.** Similar to other areas of law, reasonableness of a rehabilitative plan for a parent depends on the circumstances in a particular case and, therefore, is examined on a case-by-case basis.
5.  **Juvenile Courts: Parental Rights: Child Custody: Visitation.** Pretreatment assessments, psychiatric testing, or psychological evaluations of a parent may be required to determine the best interests of a child when issues of custody, visitation, and termination of parental rights are presented.
6.  **Juvenile Courts: Parental Rights.** Juvenile courts have broad discretionary power to rehabilitate a parent, but not without limits.
7.  **Juvenile Courts: Parental Rights: Child Custody: Visitation: Evidence.** If a juvenile court finds that a pretreatment assessment and/or the release of medical records are necessary for parental rehabilitation in cases not involving custody,