Keith Harris, appellant, v. Robert E.
O'Connor, Jr., appellee.
___ N.W.2d ___

Filed January 10, 2014.    No. S-13-103.

1. **Summary Judgment.** Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.
2. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.
3. **Malpractice: Attorney and Client: Negligence: Proof: Proximate Cause: Damages.** In a civil action for legal malpractice, a plaintiff alleging professional negligence on the part of an attorney must prove three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss to the client.
4. **Malpractice: Attorney and Client: Negligence: Proof.** When a plaintiff asserts attorney malpractice in a civil case, the plaintiff must show that he or she would have been successful in the underlying action but for the attorney's negligence.

Appeal from the District Court for Douglas County: Timothy P. Burns, Judge. Affirmed.

Thomas D. Wulff and Thomas J. Freeman, of Wulff & Freeman, L.L.C., for appellant.

William M. Lamson, Jr., and Jason W. Grams, of Lamson, Dugan & Murray, L.L.P., for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Heavican, C.J.
## I. INTRODUCTION
Appellant, Keith Harris, brought this action against appellee, Robert E. O'Connor, Jr., for professional malpractice. O'Connor's motion for summary judgment was granted. We affirm.

## II. FACTUAL BACKGROUND
Harris, a former captain with the Omaha Police Department, retained O'Connor, an attorney, to represent him in several

actions, including one to obtain disability benefits from the city of Omaha, Nebraska.

A hearing on Harris' petition for benefits was held before the City of Omaha Police and Fire Retirement System Board of Trustees (Board) on January 20, 2011. At the hearing, O'Connor presented five exhibits relating to Harris' medical records and opinions from Harris' treating medical providers. The minutes note that O'Connor asked the Board to take judicial notice of its own rules, regulations, and applicable ordinances. There is no indication either in the minutes or in the audio recording of the hearing whether the Board would do so. Harris' application was denied.

Harris met with O'Connor to discuss how to proceed. Specifically, the two discussed whether the decision of the Board should be appealed to the district court. Harris and O'Connor held e-mail conversations after this meeting. At some point during these conversations, O'Connor expressed concern about whether the record was properly made before the Board because the applicable ordinances were not offered into evidence. According to O'Connor's affidavit, he had concluded prior to the hearing that he could ask the Board to take judicial notice of the applicable ordinances and then request the inclusion of those ordinances in his praecipe for transcript to the district court.

But based on conversations with the Omaha city clerk, O'Connor later decided that going back before the Board might be the better option. In an e-mail dated February 9, 2011, O'Connor wrote to Harris: "I talked first to . . . the City Clerk. He is of the opinion that we should go back to the Board, and offer the Ordinances physically. While there is no rule that says you have to do it that way, he thinks it [is] safer."

In response, Harris indicated that he would "like to go with the safest most certain route" and also inquired as to the "statu[t]e of limitations . . . on the appeal of the . . . Board's decision." O'Connor indicated that he would have to "look again at the limitation period for filing in District Court. But, if we are going back to the Board, it doesn't make any difference. Whatever the clock is, it starts over when we go back."

Harris answered that he "think[s] we should be safe rather than sorry and go to District Court with the January 20th . . . Board Hearing safely inside our limitation lines." O'Connor responded, "I do not understand this email. If we appeal now, we do not go back to the Board . . . . Which do you wan[t]?" Harris replied:

> E-mail is a difficult medium. (smiling)
>
> I was responding to the following part of your e-mail:
>
> "*I have to look again at the limitation period for filing in District Court. But, if we are going back to the Board, it doesn't make any difference. Whatever the clock is, it starts over when we go back.*"
>
> I agree with the path we have set. I am not asking to change it over-all. The thought I am conveying is that we should use January 20th (The first . . . Board meeting date) as our date for satisfying the statute of limitations. (Once that date is determined[.]) It seems to me that using the January 20th date is the safest way to go so District Court can not [sic] say they can't consider things that occurred in the meeting on the 20th due to the date being beyond the statute of limitations. (It is a redundancy, possibly, but I like fail safe planning[.])

O'Connor answered, "[s]o, basically, we agree, some days email sucks."

Harris terminated his relationship with O'Connor on February 28, 2011. At the time of the termination, no appeal had been filed from the Board's decision, nor had the Board been asked to rehear its denial of Harris' petition for disability benefits.

Harris filed suit against O'Connor for professional malpractice on February 8, 2012; an amended complaint was filed on December 4. In his amended complaint, Harris alleged that O'Connor committed legal malpractice when he failed to (1) investigate the proper procedure to enter an ordinance into evidence, (2) introduce the ordinance into evidence at the hearing before the Board, and (3) file an appeal of the Board's denial to the district court.

O'Connor filed for summary judgment. At the hearing on the motion for summary judgment, Harris offered expert

testimony on the procedures to be followed when preserving a record for appellate purposes. Following the hearing, O'Connor's motion for summary judgment was granted. In granting the motion, the district court reasoned that Harris could not prevail on his claim unless he could show that he would have been successful in the underlying action but for O'Connor's alleged negligence. The district court found that in this case, Harris never directed O'Connor to file an appeal of the Board's decision with the district court. The court also noted that O'Connor had properly preserved the record before the Board such that an appeal would have been possible. In reaching the latter conclusion, the district court noted that it disagreed with Harris' expert, whose opinion was that the record was not preserved. The district court also noted that the expert's testimony was not "allowed," because the question was a legal one.

### III. ASSIGNMENTS OF ERROR

On appeal, Harris assigns, restated and consolidated, that the district court erred in (1) granting O'Connor's motion for summary judgment and (2) "refusing to allow evidence from experts on the issue of legal malpractice."

### IV. STANDARD OF REVIEW

[1] Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[1]

[2] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.[2]

---

[1] *Southwind Homeowners Assn. v. Burden*, 283 Neb. 522, 810 N.W.2d 714 (2012).

[2] *Churchill v. Columbus Comm. Hosp.*, 285 Neb. 759, 830 N.W.2d 53 (2013).

## V. ANALYSIS

### 1. Motion for Summary Judgment

Harris first assigns that the district court erred in granting O'Connor's motion for summary judgment.

[3,4] In a civil action for legal malpractice, a plaintiff alleging professional negligence on the part of an attorney must prove three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss to the client.[3] When a plaintiff asserts attorney malpractice in a civil case, the plaintiff must show that he or she would have been successful in the underlying action but for the attorney's negligence.[4]

In Harris' amended complaint, he alleged that O'Connor was negligent in three ways: failing to investigate how to preserve the record before the Board, failing to properly preserve that record, and failing to appeal the Board's decision to the district court.

### (a) Appellate Record

Harris alleges first that O'Connor failed to investigate and properly preserve the record before the Board for appellate review.

The facts show that O'Connor asked the Board to take judicial notice of the applicable ordinances. The Board did not audibly respond to this request. But our case law makes it clear that the Board was required to take such notice of its own ordinances.[5] And because the Board adjudicated Harris' petition on the merits, the Board obviously took judicial notice of the ordinances in question.

---

[3] *Young v. Govier & Milone*, 286 Neb. 224, 835 N.W.2d 684 (2013).

[4] See *Bowers v. Dougherty*, 260 Neb. 74, 615 N.W.2d 449 (2000).

[5] *Foley v. State*, 42 Neb. 233, 60 N.W. 574 (1894). See *State v. Lewis*, 240 Neb. 642, 483 N.W.2d 742 (1992) (Caporale, J., dissenting). Cf., *Owen, Administrator v. Moore*, 166 Neb. 226, 88 N.W.2d 759 (1958); *State v. Hohensee*, 164 Neb. 476, 82 N.W.2d 554 (1957); *Spomer v. Allied Electric & Fixture Co.*, 120 Neb. 399, 232 N.W. 767 (1930).

And the ordinances were properly preserved for appeal. The ordinance rule provides that an appellate court

> cannot undertake to notice the ordinances of all the municipalities within its jurisdiction, nor to search the records for evidence of their passage, amendment or repeal. A party relying upon such matters must make them a part of the bill of exceptions, or in same manner present them as a part of the record.[6]

In this case, it is undisputed that O'Connor did not offer the ordinances as exhibits. But this court held in *State v. Bush*[7] that the responsibility of preserving the ordinances in the record can be "met by a praecipe requesting that a copy of the ordinance be included in the transcript prepared by the clerk of the county court when a notice of appeal is filed." In this case, the record shows that the custodian of those ordinances is the Omaha city clerk; the Omaha city clerk is also the custodian of the records of the Board. In this instance, then, the Omaha city clerk could produce both the ordinances and the Board records when submitting documents to fulfill the requests made in the praecipe.

Harris argues that the "exception" to the ordinance rule is applicable only in criminal cases. But he cites to no authority for this position, and we decline to make such a distinction. The fact that *Bush* is a criminal case is insufficient to suggest that this "exception" is applicable only in criminal cases.

Harris' contention that O'Connor failed to investigate and preserve the record for appellate purposes is without merit. Harris is unable to show that O'Connor's actions constituted neglect, and accordingly, summary judgment was appropriate.

### (b) Appeal

Harris also alleged that O'Connor committed malpractice when he failed to file an appeal of the Board's January 20,

---

[6] *Steiner v. State*, 78 Neb. 147, 150, 110 N.W. 723, 724 (1907). See, also, *State v. Abbink*, 260 Neb. 211, 616 N.W.2d 8 (2000).

[7] *State v. Bush*, 254 Neb. 260, 266, 576 N.W.2d 177, 180 (1998).

2011, decision. The district court, in granting O'Connor's motion for summary judgment, found that there was no evidence in the record that Harris had told O'Connor's motion for to appeal the Board's denial. Because we find that Harris has not produced evidence to show that O'Connor's actions constituted neglect or that Harris was harmed, the district court's grant of summary judgment was correct.

First, there is no genuine issue of material fact on the question of whether Harris directed O'Connor to appeal. In the days following the unsuccessful Board hearing, Harris and O'Connor met and then exchanged e-mails regarding how to proceed. There is no allegation or suggestion that during their face-to-face meeting, Harris told O'Connor to appeal.

More discussion on the topic was had via e-mail on February 9 and 10, 2011. We agree that these e-mails were confusing. But broadly understood, the e-mails suggest that Harris and O'Connor were in agreement that a rehearing before the Board should be sought and would likely show a genuine issue of material fact as to whether Harris told O'Connor to file for a rehearing. But Harris did not allege in his amended complaint that O'Connor committed malpractice by failing to expeditiously file for a new hearing with the Board. Rather, his amended complaint, as relevant here, alleged only that Harris told O'Connor to file an appeal, and O'Connor failed to do so. The e-mails simply do not show that Harris ever told O'Connor to appeal the Board's denial prior to terminating O'Connor's services on February 28.

Nor does the amended complaint clearly allege that Harris told O'Connor to appeal. Rather, Harris simply alleges that he "indicated to [O'Connor] that he was interested in pursuing an appeal." And in another place, he alleged that he "indicated that he was inclined to appeal."

And Harris cannot show that any negligence by O'Connor proximately caused harm to Harris. Section 22-91 of the City of Omaha's Police and Fire Retirement System pension ordinances provides in part that the Board "is hereby authorized and empowered and may open for rehearing any case where a former city employee has been denied an application for

a disability pension, which application had been previously heard . . . upon presentation of new evidence."[8]

The record establishes that Harris and O'Connor were anticipating new evidence to present to the Board, including "Al's report," as well as possibly "a report from either the [physical therapist] who gave you the FCE or Dr. [Alicia] Feldman." "Al's report" apparently was the key, as O'Connor writes: "Really can't do anything until we have Al's report." That report apparently refers to a "Loss of Earnings Capacity Evaluation" completed by Alfred Marchisio, Jr., dated March 11, 2011. Harris terminated O'Connor's employment on February 28.

Under § 22-91, Harris could have returned to the Board with that report and asked the Board to rehear his application. As such, any negligence on the part of O'Connor could not have been the proximate cause of the injury suffered by Harris because the record establishes that Harris suffered no injury, as Harris could have asked the Board for rehearing at any time he had new evidence to present. And the record in this case shows that Harris and O'Connor were, in fact, anticipating new evidence. Accordingly, summary judgment was appropriate.

The district court did not err in granting O'Connor's motion for summary judgment. Harris' first assignment of error is without merit.

## 2. Expert Testimony

In his second assignment of error, Harris assigns that the district court erred in finding that the issue of whether an attorney commits malpractice is a question of law and in refusing to allow expert testimony on the issue.

The expert testimony in question opined that O'Connor had failed to preserve for appellate review the record of Harris' petition before the Board. Whether an appellate record is appropriately preserved is a question of law. And expert testimony is generally not admissible concerning a question of law.[9]

---

[8] Omaha Mun. Code, ch. 22, art. III, § 22-91 (2001).

[9] *Sports Courts of Omaha v. Brower*, 248 Neb. 272, 534 N.W.2d 317 (1995).

Even if expert testimony was admissible, Harris' expert was wrong—the law does allow municipal ordinances to be requested in the praecipe rather than introduced as exhibits at the hearing.[10]

The district court did not err in not admitting the evidence of Harris' expert. Harris' second assignment of error is without merit.

## VI. CONCLUSION

The decision of the district court is affirmed.

Affirmed.

---

[10] See *State v. Bush, supra* note 7.